# COMMONWEALTH *vs.* MATTHEW SABETTI.

Middlesex. December 2, 1991. - February 4, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Constitutional Law*, Search and seizure, Probable cause. *Search and Seizure*, Automobile, Threshold police inquiry, Plain view, Probable cause. *Arrest. Probable Cause. Practice, Criminal*, Required finding, Verdict. *Controlled Substances. Joint Enterprise.*

In a criminal case in which a State trooper, having witnessed trash being thrown from a vehicle in a restaurant parking lot, approached the vehicle, questioned its occupants and, while investigating the littering violation, discovered plainly visible narcotics contraband on the person of the defendant's companion and inside the vehicle, the findings of the judge on the basis of the evidence presented at a hearing on a motion to suppress the controlled substances and contraband seized by the State police from the person of the defendant and from the vehicle which he occupied established that there was probable cause to search and arrest the defendant. [775-777]

At a criminal trial, the judge did not err in denying the defendant's motion for a required finding of not guilty of trafficking in cocaine in violation of G. L. c. 94C, § 32E, where evidence presented by the Commonwealth was sufficient to enable the jury to conclude that the defendant knew of cocaine seized by State police from a vehicle in which he was an occupant, that the defendant possessed or intended to exercise control over the cocaine, and that the defendant entered into a joint enterprise with the driver of the vehicle to traffic in cocaine. [777-780]

A judge erred in exercising his discretion under Mass. R. Crim. P. 25 (b) (2) in ordering entry of a finding of guilty of possession of cocaine with intent to distribute in lieu of a jury's verdict of guilty of trafficking in cocaine in violation of G. L. c. 94C, § 32E, where the Commonwealth introduced sufficient evidence that the defendant possessed over twenty-eight grams of cocaine with the intent to distribute the same. [780-781]

INDICTMENT found and returned in the Superior Court Department on April 29, 1987.

A pretrial motion to suppress evidence was heard by *John P. Sullivan*, J., and the case was tried before *James F. Mc-Hugh, III*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Carol A. Donovan*, Committee for Public Counsel Services (*Millie Whatley*, Committee for Public Counsel Services, with her) for the defendant.

*Kevin J. Mahoney*, Assistant District Attorney, for the Commonwealth.

NOLAN, J. On April 29, 1987, a Middlesex County grand jury indicted the defendant, Matthew Sabetti, on charges of trafficking in cocaine, possession of cocaine, possession of marihuana, unlawful possession of controlled substances (three indictments charging four counts), and assault and battery on a police officer.[1] On April 5, 1988, a jury found the defendant guilty of trafficking in cocaine and possession of marihuana and returned not guilty verdicts on the remaining indictments.

The judge allowed the defendant's posttrial motion for a required finding of not guilty on the trafficking charge and, pursuant to Mass. R. Crim P. 25 (b) (2), 378 Mass. 896 (1979), ordered the entry of a guilty verdict of the lesser included offense of possession of cocaine with intent to distribute. The conviction of possession of marihuana was placed on file. A single justice of the Appeals Court stayed the execution of the sentence pending this appeal.

The defendant appeals from his conviction, arguing that the motion judge improperly denied his motion to suppress the controlled substances and contraband seized by the State police from his person and from the vehicle which he occupied, since the police did not have probable cause to arrest or to search him. The defendant further contends that the trial

---

[1] The grand jury also indicted John A. Graticcia on several charges. Graticcia and Sabetti initially were tried together. On the second day of trial, however, the judge declared a mistrial as to Graticcia, finding him incompetent, by reason of drug addiction, to stand trial. Their cases were severed and Sabetti's trial continued the next day.

judge should have directed a finding of not guilty on the trafficking in cocaine and possession of cocaine with intent to distribute charges, because the Commonwealth failed to introduce sufficient evidence that he had knowledge or possession of the cocaine seized from the vehicle. The Commonwealth cross appeals from the trial judge's decision to reduce the verdict of cocaine trafficking to possession of cocaine with intent to distribute, asserting that the judge committed an error of law in exercising his discretion under Mass. R. Crim. P. 25 (b) (2). We granted the defendant's application for direct appellate review. For the reasons set forth below, we hold that the defendant's claims of error are without merit. Further, we conclude that the trial judge erred in reducing the trafficking conviction.

We state the facts relevant to this appeal. On January 7, 1987, at approximately 6:30 P.M., Trooper David Otte of the State police drove into the Burger King restaurant parking lot located alongside the Massachusetts Turnpike in Natick. At that time, Trooper Otte observed a vehicle parked in an isolated section of the lot. He noticed trash being thrown from the driver's side of the vehicle onto the ground. Consequently, the trooper drove toward the vehicle and positioned the front of the police cruiser perpendicular to the front passenger door of the vehicle so that the headlights shone at the vehicle.

As he approached the vehicle, Otte saw trash strewn about the ground outside both the driver and front passenger doors. He approached the defendant, who then was sitting in the driver's seat, and asked him about the improperly disposed trash. Sabetti denied having thrown the trash to the ground. Trooper Otte then walked around the vehicle to the passenger side where he observed and spoke to John Graticcia.

Through the passenger window, aided by a flashlight, the trooper viewed Graticcia and the front interior of the vehicle. Otte observed several items in Graticcia's open, right breast pocket, including a brown plastic medicine vial bearing the name "Janet" on the label, a folded piece of glossy paper, a section of a plastic straw, a small metal aspirin tin and a

small amber vial which appeared to contain a white powdery substance. Based on his experience and training, Otte recognized these objects as implements used to consume and to distribute cocaine. The trooper also observed several bottles like the type that contain prescription medicines scattered about the floor of the vehicle. Some of the bottles appeared to contain pills. Additionally, Otte noticed the following items on the floor of the vehicle: a brown medicine bottle containing a fluid, cotton balls, and several empty soft drink bottles covered on their tops with perforated tinfoil. The trooper understood these materials to be the type of instruments commonly used to smoke or "freebase" cocaine. The interior of the vehicle, according to Otte, was a "mess," filled with trash, clothing, and other personal items.

Trooper Otte ordered Graticcia out of the vehicle and then searched him. After confiscating the contraband he had observed in Graticcia's pocket, Otte arrested Graticcia, handcuffed him, and placed him in the cruiser. Otte returned to Sabetti, who then was standing outside the vehicle, and searched him. Placing his hand inside Sabetti's pants pocket, Otte discovered and seized a plastic bag which appeared to contain marihuana. When the trooper informed Sabetti that he was under arrest, Sabetti became physically abusive and attempted to elude Otte's grasp. A few moments later, Otte apprehended Sabetti, handcuffed him, and placed him in the cruiser.

While the defendant and Graticcia sat in the cruiser, Trooper Otte viewed the rear interior of the vehicle. He observed more bottles and a white canvas gym bag on the seat. Protruding from the outside compartment of the bag were several plastic bags, seemingly dusted with white crystalline powder.

Shortly thereafter, four State troopers arrived in the parking lot, responding to a call from a bystander and a radio request for back-up from Trooper Otte. Pursuant to State police regulations, the troopers arranged for the vehicle to be towed to police barracks in Weston in order to conduct an

inventory search.[2] The troopers concluded that the inventory procedure could best be conducted at the barracks, given the large quantity of items in the car and the relatively poor lighting conditions in the parking lot.

In the course of conducting the inventory of the vehicle's contents, the police seized several items, including: a canvas bag which held two plastic bags (subsequently determined by analysis to contain 38.02 grams of eighty-one per cent pure cocaine), a plastic measuring spoon, a grinder (subsequently determined to contain cocaine residue), seven plastic bags (subsequently determined to contain cocaine residue), a funnel, a strainer, Inositol powder,[3] a gram scale, several pieces of glossy paper, a test tube (subsequently determined to contain cocaine residue), numerous prescription tablets, a small smoking pipe, a switchblade knife, more than five grams of marihuana, an ankle brace, a message "beeper," papers referring to transactions, a syringe (subsequently determined to hold liquid cocaine), a gun, a holster, and a large number of empty prescription bottles.

Graticcia and Sabetti were booked, photographed, and fingerprinted at the State police barracks in Weston. The booking officer confiscated $1,090 from Graticcia, who then appeared to be under the influence of narcotics. Graticcia had an extremely swollen and discolored ankle at that time. During the booking, the defendant falsely identified himself as "Justin" Sabetti. The defendant's speech at that point sounded sluggish and his coordination seemed impaired, although he did not exhibit signs of alcohol intoxication. The police determined that Graticcia owned the vehicle.

---

[2]State Police Policy (OPR-26), Motor Vehicle Inventory, states that "[i]t shall be the policy of the Division of State Police to conduct and record an inventory of the contents of vehicles towed, removed or stored at the request of the Division as the result of a police action." State police procedure (OPR-26A) under the same heading provides that articles deemed to be contraband, which are found in the course of an inventory conducted pursuant to State police policy, shall be seized and held for further investigation.

[3]The Commonwealth's expert testified that Inositol powder is a dilutant mixed with cocaine to increase its volume and thereby the profits.

1. *Denial of the motion to suppress.* The defendant challenges the determination of the motion judge that Trooper Otte had probable cause to search and arrest Sabetti in the Burger King parking lot. Specifically, the defendant contends that Otte did not have probable cause to believe that he had committed or then was attempting to commit a crime and, therefore, the fruits of the search should have been suppressed. Absent a showing of clear error, we accept the motion judge's findings of fact and grant substantial deference to his rulings of law. *Commonwealth* v. *Cast*, 407 Mass. 891, 897 (1990), and cases cited.

The motion judge found that Trooper Otte was entitled to approach the vehicle in the parking lot and question its occupants, having witnessed trash being thrown therefrom.[4] The judge concluded that the initiation of the investigation by Trooper Otte was permissible in the circumstances. *Commonwealth* v. *Helme*, 399 Mass. 298, 300 (1987), and cases cited. There is no error in this ruling.

The motion judge next considered whether the scope of the search conducted was justified in the circumstances. *Helme, supra.* Otte testified that, while legitimately investigating the littering violation, he inadvertently discovered plainly visible narcotics contraband on the person of Graticcia and inside the vehicle. The motion judge found Otte's testimony to be credible. We shall not disturb this finding on appeal. *Commonwealth* v. *Bottari*, 395 Mass. 777, 780 (1985), citing *Commonwealth* v. *Meehan*, 377 Mass. 552, 557 (1979). These facts, the motion judge reasoned, supported the conclusion that Trooper Otte's search of Graticcia and the vehicle, as well as the seizure of the evidence located therein, was justified under the "plain view doctrine." *Commonwealth* v. *Cefalo*, 381·Mass. 319, 331-332 & n.9 (1980). The motion judge's findings and rulings are amply supported by the record.

---

[4]General Laws c. 270, § 16 (1990 ed.), makes criminal the disposal of rubbish on or near a public way and imposes a fine up to $10,000.

The motion judge further concluded that, based on Graticcia's apparent possession of narcotics and related contraband, the presence of several prescription medicine vials in the vehicle, and other paraphernalia known to the trooper as instruments used to consume and to distribute narcotics, Trooper Otte had probable cause to arrest the defendant. In support of this holding, the motion judge cited *United States v. Hensley*, 469 U.S. 221, 235 (1985) (police officer had probable cause to arrest passenger in automobile which contained evidence of a crime in plain view). We agree with the motion judge's analysis.

Probable cause to arrest and search Sabetti existed, if Trooper Otte's knowledge of the facts and circumstances would have "warrant[ed] a person of reasonable caution in believing" that Sabetti may have possessed controlled substances. *Commonwealth* v. *Gullick*, 386 Mass. 278, 283 (1982). Objectively viewing the facts and circumstances known to Trooper Otte at the relevant time, we conclude that probable cause existed to search and to arrest Sabetti. *Id*. at 284.

Trooper Otte rightfully arrested Graticcia for possession of what he reasonably believed to be cocaine and cocaine-related materials. The trooper thus had probable cause to search the vehicle for the purpose of "seizing fruits, instrumentalities, contraband and other evidence of the crime for which the arrest has been made in order to prevent its destruction or concealment." *Commonwealth* v. *Borden*, 403 Mass. 1008, 1009 (1988), quoting G. L. c. 276, § 1 (1986 ed.). In so doing, the trooper testified that he observed contraband throughout the interior of the vehicle, including the driver's seat area where Sabetti sat. Otte further noted that the defendant and Graticcia had parked in a relatively isolated area of the lot, likely in an effort to avoid detection while ingesting narcotics. Otte reasonably concluded from these facts that Sabetti at least constructively possessed contraband, and further concluded that he may have held narcotics on his person as well. As the motion judge correctly ruled, the fact that Otte searched Sabetti and found a quan-

tity of marihuana prior to arresting him is irrelevant. *Commonwealth* v. *Brillante*, 399 Mass. 152, 154-155 n.5 (1987). For the foregoing reasons, we conclude that the motion judge properly denied Sabetti's motion to suppress.

2. *Denial of the motion for required finding of not guilty.* The defendant argues that the trial judge erroneously denied his motion for a required finding of not guilty of trafficking in cocaine. The defendant contends that he was entitled to such a finding as a matter of law, since the Commonwealth failed to introduce sufficient evidence that he knew of the presence of the cocaine in Graticcia's vehicle, that he possessed or intended to exercise control over the cocaine, or that he entered into a joint enterprise with Graticcia to traffic in cocaine. We are not persuaded by the defendant's arguments.

"When reviewing the denial of a motion for a required finding of not guilty, we look at the evidence in the light most favorable to the Commonwealth." *Commonwealth* v. *Garcia*, 409 Mass. 675, 686 (1991). To defeat a motion for a required finding of not guilty, the evidence presented by the Commonwealth must be "sufficient . . . to permit the jury to infer the existence of the essential elements of the crime charged." *Commonwealth* v. *Sandler*, 368 Mass. 729, 740 (1975). The Commonwealth contended at trial that the defendant possessed over twenty-eight grams of cocaine with the intent to distribute the same (elements of trafficking in cocaine as stated in G. L. c. 94C, § 32E, as appearing in St. 1983, c. 571, § 3) or, alternatively, that the defendant participated in a joint venture with Graticcia to traffic in cocaine. We hold that, based on the evidence submitted by the Commonwealth at trial, the jury would have been warranted in convicting the defendant under either theory.

To support a conviction of trafficking in cocaine under G. L. c. 94C, § 32E, the Commonwealth must prove that the defendant had "possession" of the cocaine. *Commonwealth* v. *Garcia, supra.* Possession may be established through evidence that the defendant had "control and power" over the cocaine. *Id.,* quoting *Commonwealth* v.

*Deagle*, 10 Mass. App. Ct. 563, 567 (1980). Constructive possession may be proved by "knowledge coupled with the ability and intention to exercise dominion and control." *Id.* The Commonwealth acknowledges that it must establish more than the defendant's presence in the vehicle to support a finding of possession. *Commonwealth v. Bongarzone*, 390 Mass. 326, 345 (1983). The Commonwealth asserts, however, that it introduced evidence of "[p]resence . . . supplemented by other incriminating evidence" from which the jury reasonably could infer that the defendant, the person occupying the driver's seat of the vehicle, knew of or intended to control the narcotics and the related materials surrounding him. *Garcia, supra* at 687, citing *Commonwealth v. Brown*, 401 Mass. 745, 747 (1988). The most noteworthy evidence offered to support this inference is the testimony of Trooper Otte, who described the interior of the vehicle as a virtual wasteland of plainly visible contraband, and who opined that Graticcia was under the influence of narcotics and recited the fact that the defendant attempted to flee the scene when Otte attempted to arrest him. This latter fact allows for the inference of consciousness of guilt. *Commonwealth v. Brzezinski*, 405 Mass. 401, 410 (1989), citing *Commonwealth v. LaPerle*, 19 Mass. App. Ct. 424, 427 (1985). We agree with the Commonwealth that the jury properly could infer, on the basis of this evidence, that the defendant knew of the contraband and the plainly visible bags of cocaine and therefore could properly have been found constructively to possess the same. *Garcia, supra* at 687, citing *Commonwealth v. Almeida*, 381 Mass. 420, 423 (1980).

The defendant further contends that the canvas bag in which the cocaine was located belonged solely to Graticcia as evidenced by the fact that it contained an ankle brace used to relieve his injured ankle. Given this fact, the defendant claims that the bag was exclusively in the possession and control of Graticcia. In rebuttal, the Commonwealth contends that the jury could infer joint control over the bag from evidence that the defendant had knowledge of its contents

and the fact that the bag also contained marihuana — the substance found on Sabetti's person at the time of his arrest.

In addition, the Commonwealth presented expert testimony as to the nature and significance of the contraband found within the vehicle. The expert, a veteran member of the Middlesex narcotics task force, opined that the instruments found in the vehicle typically are associated with drug trafficking. In particular, the expert testified that, based on his knowledge and experience, the presence of a message beeper, pieces of glossy paper, notes regarding transactions or "cuff sheets" and a large amount of cash in the vehicle indicates drug trafficking activity. Furthermore, the expert testified that the quality of the cocaine found in the vehicle was not consistent with cocaine intended for personal use. Rather, the expert stated that the purity of the cocaine — eighty-one per cent — signals the fact that the cocaine is at a high level in the distribution chain. The expert explained that cocaine gradually becomes more diluted as it filters through the distribution system, generally resulting in twenty-five per cent pure cocaine at the street level. Based on his experience, the expert stated that, in 1988, cocaine intended for personal use actually contained anywhere from ten to twenty-five percent pure cocaine. The evidence provided a sufficient basis on which the jury could find the defendant guilty of trafficking in cocaine.

The Commonwealth's evidence also was sufficient to enable the jury to conclude that the defendant was involved in a joint venture with Graticcia to traffic in cocaine. "The test [for joint venture] is whether [the] defendant was (1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary." *Commonwealth* v. *Costa*, 407 Mass. 216, 224 (1990), quoting *Commonwealth* v. *Longo*, 402 Mass. 482, 486 (1988). There is no question as to the defendant's presence, so we turn to consider the defendant's knowledge or intent at the time of his arrest. *Costa, supra* at 225. "Knowledge or intent . . . may be proved by inference

from all the facts and circumstances developed at trial." *Id.* As demonstrated above, the Commonwealth presented an abundance of evidence from which the jury could infer that the defendant was aware of the cocaine and was willing to assist in its distribution. *Commonwealth* v. *Santiago*, 30 Mass. App. Ct. 207, 218 (1991) (defendant's complicity in cocaine trafficking venture may be reasonably inferred from the circumstances). For these reasons, we conclude that the jury would have been warranted in finding the defendant guilty of trafficking in cocaine under a theory of joint venture.

3. *The reduction of the jury verdict.* "On review of a judge's determination under rule 25 (b) (2) to reduce a verdict to guilty of a lesser offense, 'we consider only whether the judge abused his discretion or committed an error of law.'" *Commonwealth* v. *Keough*, 385 Mass. 314, 319 (1982), quoting *Commonwealth* v. *Gaulden*, 383 Mass. 543, 557 (1981). We conclude that the trial judge erred in reducing the jury verdict of guilty of trafficking in cocaine.

In exercising his authority to reduce the verdict pursuant to Mass. R. Crim. P. 25 (b) (2), the trial judge stated that the evidence did not establish beyond a reasonable doubt that the defendant knew that he possessed over twenty-eight grams of cocaine. While noting that he was not entirely clear as to whether the Commonwealth bore the burden of establishing such a fact, the judge entered a finding of guilty of the lesser included offense of possession of cocaine with intent to distribute. The judge thought that entry of the lesser conviction would be consonant with the interests of justice in this case, although he noted that the trafficking conviction would not necessarily be contrary to those interests either. The reduction was error.

The Commonwealth argues that the judge misconstrued G. L. c. 94C, § 32E, by interpreting that statute to require proof that the defendant knew he possessed more than twenty-eight grams of cocaine and that he intended to distribute it. The Commonwealth asserts that this reading undermines the purpose of the statute, which is to establish a

fixed and ascending statutory scheme for punishing drug dealers in a manner which corresponds to the size of their individual sales activities. *Commonwealth* v. *Maracic*, 18 Mass. App. Ct. 722, 724 (1984). The defendant responds that the statute, if construed not to require proof beyond a reasonable doubt that the defendant knew that he possessed over twenty-eight grams of cocaine, violates his State and Federal due process rights by importing a strict liability element into the offense. The defendant's argument is fundamentally flawed because the statute explicitly imposes liability for cocaine trafficking only upon proof of knowing and intentional possession of cocaine. In this regard the statute cannot be viewed as imposing strict liability. G. L. c. 94 C, § 32E. Moreover, the statutory scheme makes clear that "[t]he volume of the material being sold" is relevant to the determination of the level of drug trafficking the defendant is guilty of participating in and the appropriate penalty for that activity. See *Commonwealth* v. *Beverly*, 389 Mass. 866, 869 (1983). Since the Commonwealth introduced sufficient evidence that the defendant possessed over twenty-eight grams of cocaine with the intent to distribute the same, the jury were warranted in convicting the defendant of trafficking in cocaine.

The conviction of trafficking in cocaine is reinstated and this case is remanded to the Superior Court where an appropriate sentence shall be imposed on the defendant.

*So ordered.*