COMMONWEALTH *vs.* VICTORIA RODRIGUEZ.

Hampden. February 3, 1993. - June 8, 1993.

Present: LIACOS. C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Search and Seizure,* Forcible entry by police. *Controlled Substances.*

An affidavit in support of a search warrant application stated sufficient facts for the magistrate to conclude that a no-knock warrant should issue, and the circumstances existing at the time the warrant was executed justified police officers in making an unannounced entry. [451]

At the trial of an indictment for trafficking in over 200 grams of cocaine, there was no error in the judge's refusal, based on the holding of *Commonwealth* v. *Sabetti,* 411 Mass. 770 (1992), to instruct the jury that the Commonwealth had to prove the defendant had actual knowledge that the amount of cocaine involved exceeded 200 grams. [451-452]

At the trial of an indictment for trafficking in cocaine, the judge was not required to instruct the jury that the Commonwealth had to prove that the defendant had actual knowledge that the quantity of cocaine involved was over fourteen grams, and his failure so to instruct did not create a substantial risk of a miscarriage of justice. [452-453]

In a prosecution under G. L. c. 94C, § 32E, proof that the defendant knew the exact nature of the controlled substance involved is not required. [453-454]

INDICTMENT found and returned in the Superior Court Department on January 7, 1991.

A pretrial motion to suppress evidence was heard by *John F. Murphy, Jr.,* J., and the case was tried before *Richard F. Connon,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Patricia A. O'Neill,* Committee for Public Counsel Services, for the defendant.

*Ellen Berger,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant, Victoria Rodriguez, was convicted of trafficking in cocaine. The defendant appeals, arguing that the motion judge erred in denying her motion to suppress and that the trial judge erred in his instructions to the jury. We transferred this case here on our own motion. We affirm.

1. *The motion to suppress.* The defendant moved to suppress "as the fruits of an unlawful search and seizure all objects seized and information obtained in the execution of a Springfield District Court search warrant." She argued that neither the facts set out in the search warrant nor the circumstances existing at the time the warrant was executed justified the unannounced entry.

We set forth the pertinent facts. An informant met with Sergeant Robert T. McFarlin and Detective Dennis Kirby of the Springfield police department. The informant stated that a woman known to the informant as "Virginia" was keeping a large amount of cocaine at 2994 Main Street in Springfield. The informant had seen the cocaine in the apartment on December 15, 1990. Sergeant McFarlin took no action on this information. Sergeant McFarlin met again with the informant who stated that Virginia had told the informant that she still had eight or nine ounces of cocaine to sell. Sergeant McFarlin instructed the informant to go to 2994 Main Street and to buy a quantity of cocaine. The informant, observed by another detective, went to the premises and met with the woman known to be Virginia, who "fronted" to him a quantity of white powder to sell. The informant turned this over to the detective and a field test indicated the powder was cocaine.

Based on this information, on December 18, 1990, Sergeant McFarlin applied for a warrant to search the defendant's home. He had been a police officer for thirteen years and had participated in numerous investigations of cases involving the illegal sale and distribution of drugs. Sergeant McFarlin requested a so-called "no-knock" warrant, authorizing those executing the warrant to enter without announcement. As support, he presented concerns for the safety of the

officers and the possibility that suspects would escape and evidence would be destroyed.[1] He also noted that he was not familiar with the interior of the premises and could not represent what level of "fortification" might exist or what degree of resistance the police might encounter. The warrant issued with the no-knock provision.

The judge found that the magistrate had been informed that the target of the search warrant possessed a large amount of cocaine and that she was "fronting" cocaine for sale by others on the street. The judge also determined that the affiant had been an officer for over thirteen years, that he had been involved in a number of drug investigations, that he had executed drug-related search warrants, and that he had been involved in over 1,000 drug-related arrests. The judge found that Sergeant McFarlin told the magistrate that drug dealers often carry handguns to protect themselves, that the safety of the officers was a concern, and that a quick entrance would reduce the risk to them. The affiant also informed the magistrate that he had been present at drug raids at which weapons were found and one at which a law en-

---

[1] In pertinent part, Sergeant McFarlin's affidavit states: "When conducting a drug raid the narcotics officers place emphasis on safety first. During these incidents our officers are entering an unknown situation which could possibly result in injury to either an officer or other person present. Thus, the element of surprise is a safety valve which enables our officers to enter quickly and safely with a minimum of risk. It has been my experience that drug dealers often carry weapons to protect themselves from rip offs by other drug dealers, and that these weapons are usually handguns. I have been present many times on past raids when our officers have recovered [s]uch handguns, and I was present when a CPB narcotics officer was shot with a handgun on a drug raid. Also, the faces of narcotics officers are well known to drug dealers in the area who could warn of our arrival and result in the destruction of evidence or the escape of suspects before we are able to secure them. Additionally, the substance cocaine is a type of drug which could be easily destroyed by flushing in a sink or toilet should the presence of the police become known, thus destroying valuable evidence which is necessary for proper prosecution in court. And finally, having never been inside this location personally, I have no way of knowing for certain what level of fortification or degree of resistance we will encounter there. For all the above reasons I am requesting a no-knock warrant be issued for the above location."

forcement officer had been shot. The judge further found that the magistrate was told that the faces of the narcotics officers would be recognized by others in the vicinity, who could warn the individuals within the premises to be searched. That possibility made the destruction of the contraband and the possible escape of the suspects a concern.

The judge then considered the circumstances that existed at the time of the execution of the warrant. The judge found that a detective who was maintaining a surveillance of the subject premises informed McFarlin that the occupant repeatedly approached the front window and looked up and down the street. McFarlin received that information again as he neared the premises, at which point he ordered the squad of officers who were proceeding to the premises to hold off until he had received an "all clear" sign from the officer watching the house. The judge ruled that this evidence was sufficient to justify the unannounced entrance.

The requirement that law enforcement officials announce themselves when executing a warrant is a principle of common law. *Commonwealth* v. *Cundriff*, 382 Mass. 137, 146 (1980), cert. denied, 451 U.S. 973 (1981). We have said that some exceptions to the announcement rule exist. In *Cundriff*, we ruled that the police need not identify themselves when executing an arrest warrant in a situation where "there was a strong possibility that an announcement by the police of their identity and purpose would have endangered themselves or others." *Id.* at 147. A no-knock entry is permitted where the police informed the magistrate of circumstances which provided probable cause to believe that the object of the search, the contraband, would be destroyed. *Commonwealth* v. *Scalise*, 387 Mass. 413, 421 (1982). We have cautioned that the probable cause leading to this belief must be based on facts "uniquely present in the particular circumstances," *id.*, and have noted that the "fact that drugs are involved is, by itself, insufficient to provide the necessary showing." *Commonwealth* v. *Gomes*, 408 Mass. 43, 45 (1990), citing *Commonwealth* v. *Scalise, supra.*

The magistrate was justified in concluding on the face of the affidavit that there were sufficient facts to allow the officers to enter without announcement. In Sergeant McFarlin's experience, handguns were a danger to law enforcement agents during drug-related searches.[2] Additionally, the judge concluded that the magistrate was aware that the target of the warrant dealt in large quantities of cocaine and was "fronting" cocaine to be sold on the street. The judge determined that, by fronting, she was insulating herself from detection. That, the judge concluded, implied sophistication on the part of the occupant. We agree that these facts provided probable cause for the magistrate to conclude that the police need not announce themselves.

. The defendant argues that the officers should have reappraised the situation at the threshold and determined that there was no need not to announce themselves. See *Commonwealth* v. *Scalise, supra* at 421. The defendant points to the facts that the police officers did not have to pass the house in order to make their entry, that they were able to park close enough to the premises to get from their vehicles to the house in ten seconds, and that the surveillance indicated that the defendant was home alone.

The affidavit cited fear for the safety of the officers and the danger that the contraband would be destroyed as reasons for the no-knock entry. The fact that the surveillance indicated the presence of only one individual does not establish that only one individual was present, nor does it militate against the fear that evidence would be destroyed. There was no error in denying the motion to suppress.

2. *Instructions.* a. *Actual knowledge of quantity of cocaine.* The defendant makes two arguments in relation to the amount of cocaine involved.[3] She first claims that the judge

---

[2]Although there was no specific information from the informant that firearms were present, the affiant's experience could be considered.

[3]The cocaine was found in two locations. The police found nine plastic bags, which were later determined to contain 2.75 grams of cocaine, on the counter in the kitchen. Eight larger bags were found inside the molding of the refrigerator door, and they were determined to hold 212.443 grams.

erred in failing to honor her request that he instruct the jury that the Commonwealth had to prove that the defendant had actual knowledge that the amount of cocaine involved exceeded 200 grams. The defendant argues that, without proof of actual knowledge, the statute imposes strict liability. We do not agree.

General Laws c. 94C, § 32E (b) (4) (1990 ed.), is set out in the margin.[4] In *Commonwealth* v. *Sabetti*, 411 Mass. 770, 781 (1992), we determined that "the statute explicitly imposes liability for cocaine trafficking only upon proof of knowing and intentional possession of cocaine." In *Sabetti*, we said that the quantity of cocaine possessed was relevant to the mandatory penalty to be imposed. *Id*. Therefore we concluded that the statute did not impose strict liability and that the Commonwealth was required to introduce sufficient evidence that the amount of cocaine possessed exceeded a certain level to permit the jurors to consider the charge. *Id*. *Sabetti* governs this case. There was no error in the judge's refusal to instruct as the defendant requested.

The defendant also argues that it was error for the judge not to instruct the jury that the Commonwealth had to prove that she had actual knowledge that she possessed more than fourteen grams of cocaine.[5] The defendant did not request such an instruction and did not object to the lack of such an

---

[4]"Any person who traffics in a controlled substance defined in [§ 31, Class B (a) (4) (1990 ed.)] by knowingly or intentionally manufacturing, distributing or dispensing or possessing with intent to manufacture, distribute or dispense or by bringing into the commonwealth a net weight of fourteen grams or more of a controlled substance as so defined, or a net weight of fourteen grams or more of any mixture containing a controlled substance as so defined shall, if the net weight of a controlled substance as so defined, or any mixture thereof is: . . .

"(4) Two hundred grams or more, be punished by a term of imprisonment in the state prison for not less than fifteen nor more than twenty years. No sentence imposed under the provisions of this clause shall be for less than a mandatory minimum term of imprisonment of fifteen years and a fine of not less than fifty thousand nor more than five hundred thousand dollars may be imposed but not in lieu of the mandatory minimum term of imprisonment, as established herein."

[5]The minimum weight of fourteen grams differentiates the crime of trafficking in cocaine, a violation of G. L. c. 94C, § 32E, from the separate

instruction. Therefore, we review the issue to see whether the judge committed "a serious and obvious error creating a substantial risk of a miscarriage of justice." *Commonwealth* v. *Pares-Ramirez*, 400 Mass. 604, 609 (1987).

We note that possession of a quantity of at least fourteen grams of cocaine is an element in the crime of trafficking. See G. L. c. 94C, § 32E; *Commonwealth* v. *Johnson*, 410 Mass. 199, 201 (1991). Nonetheless, the Commonwealth need not prove that the defendant had actual knowledge of the quantity. Instead, in order to convict, the Commonwealth must satisfy the jury that the amount of cocaine was fourteen grams or more. Because the jury convicted the defendant under G. L. c. 94C, § 32E (*b*) (4), of trafficking in cocaine, the jurors necessarily concluded that the Commonwealth proved that there were more than 200 grams of cocaine. The judge was not required to instruct the jury that the defendant had to have actual knowledge that the quantity of cocaine was fourteen grams or more.

b. *The nature of the controlled substance.* The defendant argues that the judge erred in not instructing the jury that it must find that the Commonwealth had proved that the defendant knew the controlled substance was cocaine. The judge instructed the jury "the Commonwealth must prove beyond a reasonable doubt that the defendant knew the substance in her possession was a controlled substance, however, the Commonwealth does not have to prove that the defendant knew the exact nature of the substance. It is sufficient, if the Commonwealth proved beyond a reasonable doubt, that the defendant was aware that she possessed some type of a controlled substance."

The Commonwealth argues that, as with the quantity of controlled substance possessed, the type of controlled substance possessed is relevant only to determine the level of drug dealing at which the accused participates and the penalty assessed on conviction. The Commonwealth points to the

---

crime of possession with intent to distribute, a violation of G. L. c. 94C, § 32A.

Federal analogue, 21 U.S.C. § 841 (1988), and the cases interpreting it as support. See, e.g., *United States* v. *Gonzalez*, 700 F.2d 196, 200-201 (5th Cir. 1983).

The defendant argues that the Federal statute is broader because it makes it "unlawful for any person knowingly or intentionally — (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance," 21 U.S.C. § 841(a), and then in § 841(b) outlines the penalties applicable depending on the type of controlled substance involved. The structure of the Massachusetts statute is different. General Laws c. 94C, § 32E (*a*), provides penalties for trafficking in certain quantities of marihuana; § 32E (*b*) provides penalties for trafficking in certain quantities of § 31, Class B (*a*) (4) substances; and § 32E (*c*) provides penalties for trafficking in certain quantities of "heroin or any salt thereof, morphine or any salt thereof, opium or any derivative thereof." That distinction is not persuasive.

The Appeals Court stated in *Commonwealth* v. *Maracic*, 18 Mass. App. Ct. 722, 724 (1984), "The logic of § 32E, considered in its entirety, is one of increasing penalties for increasing quantities of increasingly dangerous drugs." We conclude that to support a conviction under G. L. c. 94C, § 32E, the Commonwealth must prove that the defendant trafficked in one of the three categories of controlled substances, that a certain quantity of the controlled substance was involved, and that the defendant knew it was a controlled substance. Proof that the defendant knew the exact nature of the controlled substance is not an element of the crime.

*Judgment affirmed.*