## COMMONWEALTH *vs.* JUNIOR HERNANDEZ.

Plymouth. May 9, 2003. - July 2, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Controlled Substances. Joint Enterprise. Evidence,* Joint enterprise.

At the trial of an indictment for trafficking in cocaine, the defendant was entitled to a required finding of not guilty on the theory of principal liability where the evidence was insufficient for the jury to infer constructive possession. [690-693]

At the trial of an indictment for trafficking in cocaine under a joint venture theory, the judge did not err in failing to give a jury instruction that the defendant did not request. [693-694]

At the trial of an indictment for trafficking in cocaine under a joint venture theory, the judge properly denied the defendant's request for an instruction to the jury requiring them to find that each defendant had actual or constructive possession of cocaine, where such an instruction was patently inaccurate. [694-695]

INDICTMENT found and returned in the Superior Court Department on August 23, 1999.

The case was tried before *Patrick F. Brady*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*David R. Yannetti* for the defendant.

*Mary E. Lee*, Assistant District Attorney, for the Commonwealth.

COWIN, J. The defendant, Junior Hernandez, was convicted of trafficking in cocaine over one hundred grams, on both principal and joint venture theories. He appealed, arguing that the evidence was insufficient to convict him as a principal and that the judge committed prejudicial error in the joint venture instructions. The Appeals Court affirmed in an unpublished memorandum and order pursuant to its rule 1:28. *Commonwealth* v. *Hernandez*, 56 Mass. App. Ct. 1110 (2002). We granted the defendant's application for further appellate review and now affirm.

1. *Facts.* The jury could have found the following facts. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). This case began with an investigation by the State police into a possible cocaine delivery service. The investigating officers on four occasions[1] in April and May, 1999, saw the defendant and Armando Quinones (codefendant at trial) drive to Arnold's Restaurant in Holbrook. Each time, Quinones was the driver with the defendant in the front passenger seat. The details of each trip differ, but the jury could have found (and the defendant did not seriously dispute) that on each occasion the defendant delivered cocaine to various persons at the restaurant. From the defendant's perspective, the key issue at trial was whether he could be connected to the apartment that contained the larger stash of cocaine (for convenience, the stash apartment). On that, the evidence was as follows.

The stash apartment was one of ten apartments in a building on Main Street in Brockton. The defendant and Quinones were seen entering the apartment building just before making two of the sales at the restaurant. While Quinones was seen entering the building without the defendant on other occasions, the defendant was never seen entering the apartment building in the absence of Quinones.

As a result of their surveillance, the investigators sought and obtained search warrants for various locations with which Quinones and the defendant were involved, including the stash apartment. On the day that the State police planned to execute the warrant for the stash apartment, June 24, 1999, Quinones and the defendant arrived at the building in the early evening. They entered the building through the rear door (Quinones appeared to use a key) and left the building about one-half hour later. The police confronted the two men as they sat in a two-door vehicle in the apartment building's parking lot. Officers wearing State police raid jackets (with State police patches on the front and sleeves) approached the vehicle, shouting, "State police search warrant, open the door." The vehicle's doors, however, were locked, and neither the defendant nor Quinones

---

[1]On three of these occasions, the officers followed the defendant and Armando Quinones from Brockton to Arnold's Restaurant. One other time, the officers did not follow the vehicle, but observed it arrive at the restaurant.

opened them. Instead, they sat, fidgeting, and the defendant swallowed small plastic bags containing white powder, "putting one after another in his mouth." Eventually, the officers used a flashlight to break open the passenger side window. After the defendant and Quinones were secured, eight plastic bags containing a white powder were found in the vehicle on the floor on the front passenger side, where the defendant had been seated. The bags contained a total of 7.65 grams of cocaine of thirty-eight per cent purity, with lactose as a dilutant. They were similar in appearance to what the defendant had been ingesting. During a search of the defendant, the police found a pager. On Quinones, the police found a pager as well as various keys, including keys to the rear door of the building and to the stash apartment.

The officers searched the stash apartment (after gaining entry with a battering ram), recovering a can of acetone (a drying agent used for cocaine), a bottle of lactose (a dilutant used to "cut" cocaine), boxes of sandwich bags, a pager, a large plastic bag filled with plastic sandwich bags that had the corners cut out of them, and a dungaree coat with approximately $600 in an inside pocket. An electronic scale was found secreted beneath cushions of a couch. Behind tiles of a dropped ceiling in the bathroom, investigators found six baggies containing a white powder. Four of the baggies contained a total of 71.01 grams of cocaine of forty-six per cent purity. The remaining two baggies contained a total of fifteen smaller plastic bags which, in turn, contained a total of 24.74 grams of cocaine of thirty-five per cent purity. The jury also heard expert testimony, from which they could find that the apartment was used to prepare the cocaine for sale, and that the cocaine above the bathroom was intended for distribution.

Later that same day, the police also searched another address where the defendant claimed to live (and where the telephone was listed to Quinones). No drugs were found there, but the police did seize two or three bottles of lactose.

2. *Sufficiency of the evidence on principal liability.* The defendant was charged with trafficking in cocaine on June 24, 1999. As noted, the case was submitted to the jury on principal and joint venture theories. At the close of the Commonwealth's

case (which was also the close of all the evidence), the defendant moved for a directed verdict, challenging the sufficiency of the evidence as to him on the element of possession. He makes the same argument on appeal. The Commonwealth argues here, as it did below, that the evidence was sufficient for the jury to infer constructive possession.

"To sustain a conviction of trafficking in cocaine under G. L. c. 94C, § 32E, the Commonwealth must show that the defendant had 'possession' of the cocaine. *Commonwealth* v. *Santana*, 420 Mass. 205, 215 (1995). Possession may be actual or constructive. See *Commonwealth* v. *Daley*, 423 Mass. 747, 752 (1996)." *Commonwealth* v. *Sinforoso*, 434 Mass. 320, 327 (2001). "Constructive possession may be proved by 'knowledge coupled with the ability and intention to exercise dominion and control.' " *Commonwealth* v. *Sabetti*, 411 Mass. 770, 778 (1992), quoting *Commonwealth* v. *Garcia*, 409 Mass. 675, 686 (1991).

Here, the Commonwealth points to the following: there was evidence of the defendant's actual participation in drug sales; he and Quinones always travelled together to and from the sales; they were seen entering the building containing the stash apartment together; the defendant claimed to live at an apartment where police found bottles of lactose; the defendant had a pager; the defendant tried to swallow the cocaine in the vehicle when the police raided, evidencing his guilty knowledge; and the cocaine in the vehicle and the cocaine in the bathroom were similar in purity and packaging.

These facts, however, are most relevant to the issue of joint venture, for which the evidence was plentiful. In its brief, the Commonwealth has confused evidence of constructive possession with evidence required to prove joint venture. Although there was ample evidence that the defendant was a partner in Quinones's cocaine-delivery enterprise, there was a dearth of evidence that he had constructive possession of the drugs in the stash apartment. Actual participation in drug dealing can be probative of this, but the cases the Commonwealth cites are inapposite. Each involves whether a defendant had "knowledge" of drugs located in areas clearly within his ability to control. See *Commonwealth* v. *Gonzalez*, 42 Mass. App. Ct. 235, 237 (1997) (back porch of apartment); *Commonwealth* v. *Pichardo*,

38 Mass. App. Ct. 416, 417-418 (1995) (defendant entered apartment and returned with requested drugs); *Commonwealth* v. *Watson*, 36 Mass. App. Ct. 252, 258-259 (1994) (defendant in apartment and opened door). See also *Commonwealth* v. *Washington*, 50 Mass. App. Ct. 167, 167-169 (2000) (defendant's identification card found in room where drugs found on floor next to drug paraphernalia). To a similar effect was the evidence of the defendant's guilty knowledge: that he was swallowing bags of cocaine speaks to his complicity in his partner's business, but precious little about whether he had the ability to exercise dominion and control over the stash apartment. Here, again, the Commonwealth's citations are not helpful. See *Commonwealth* v. *Velasquez*, 48 Mass. App. Ct. 147, 149-151 (1999) (drugs in basement to which all building tenants had access); *Commonwealth* v. *Whitlock*, 39 Mass. App. Ct. 514, 519 (1995) (attempts to conceal or dispose of contraband permit inference of possession when combined with proximity to contraband and knowledge of its location). Cf. *Commonwealth* v. *Cruz*, 34 Mass. App. Ct. 619, 623 (1993) (evidence proved neither that defendant tried to flee apartment where drugs were found nor that he tried to protect contraband; insufficient evidence of possession). Evidence that the cocaine found in the vehicle and the cocaine found in the apartment were similarly packaged permitted the inference that the cocaine in the vehicle was drawn from the larger stash and, together with other evidence, proved the defendant's knowledge of a stash, but did not prove that the defendant possessed (had the ability and intent to exercise control over) that larger stash. Contrast *Commonwealth* v. *Pratt*, 407 Mass. 647, 651-653 (1990) (constructive possession established where defendant resided in cottage where some drugs were discovered; her knowledge of scale of drug operation and similarity of packaging and her access to and use of surrounding property established constructive possession of drugs on that property); *Commonwealth* v. *Delarosa*, 50 Mass. App. Ct. 623, 626-628 (2000) (evidence, including similarity between drugs actually possessed and stash, permitted inference defendant exercised dominion and control over stash in apartment for which defendant paid rent and was seen leaving and keys for which were on same key ring as keys for car defendant

was driving at time of arrest); *Commonwealth* v. *Fernandez*, 48 Mass. App. Ct. 530, 533 (2000) (similarity of packaging and transfer of heroin to another passenger permitted inference that defendant jointly possessed that heroin); *Commonwealth* v. *Watson*, *supra* at 260.

The evidence that the defendant constructively possessed the cocaine in the stash apartment was not sufficient to support his conviction of trafficking on this theory. There was no evidence that the defendant had any possessory or ownership interest in the apartment. None of his belongings was found there. Cf. *Commonwealth* v. *Navarro*, 39 Mass. App. Ct. 161, 169 (1995) (evidence insufficient to prove constructive possession where no evidence defendant exercised control over apartment, even though she was present and possessed drugs similar to stash). The defendant was never seen coming into or out of the apartment containing the stash. He had only been seen twice before in the area of the apartment building, each time accompanied by Quinones. The apartment was securely locked, and the defendant did not possess a key to the apartment or to the building. Nothing inside the apartment suggested that he lived there or frequented it. The defendant was entitled to entry of a required finding of not guilty on the theory of principal liability. See *Commonwealth* v. *James*, 54 Mass. App. Ct. 726, 729-731 (2002), *S.C.*, 438 Mass. 1013 (2003); *Commonwealth* v. *Dennis*, 33 Mass. App. Ct. 666, 669-672 (1992), *S.C.*, 416 Mass. 1001 (1993). Contrast *Commonwealth* v. *Alcantara*, 53 Mass. App. Ct. 591, 597 (2002) (defendant's papers and prescription pill bottle among evidence found in apartment).

3. *Jury instructions on joint venture.* Even though the evidence was insufficient to support a conviction on the theory that the defendant was a principal, because the jury rendered special, not general, verdicts, the defendant's conviction may be upheld if the verdict on the basis of the joint venture theory withstands appellate scrutiny. See *Commonwealth* v. *Plunkett*, 422 Mass. 634, 635 (1996) (verdict cannot stand unless jury reached it on theory with factual support). Contrast *Commonwealth* v. *Rolon*, 438 Mass. 808, 820 (2003) (convictions set aside where verdict slip did not require jury to specify whether verdict based on supportable joint venture theory or

unsupportable principal liability theory). As to this theory, the defendant does not contest the sufficiency of the evidence. Rather, he argues that the judge erred by failing to instruct that the Commonwealth was required to prove that he knew of the hidden stash of cocaine.

The judge correctly instructed that, to prove the defendant guilty as a joint venturer, the Commonwealth was required to prove that he was present at the scene of the crime, had knowledge that another intended to commit the crime and shared the intent to commit the crime, and by agreement was willing and available to help the other if necessary. *Commonwealth* v. *Netto*, 438 Mass. 686, 700 (2003). The judge also correctly instructed the jury that, to prove the defendant guilty of trafficking on a joint venture theory, the Commonwealth must prove (1) that the underlying crime of trafficking in cocaine was committed and (2) that the elements of joint venture defined above were satisfied. See *Rendon-Alvarez* v. *Commonwealth*, 437 Mass. 40, 44-45 (2002).

On the evidence adduced at trial, the defendant was entitled, on request, to an instruction that the jury were required to find that he knew that he was distributing the inventory of cocaine held by the principal. See *Commonwealth* v. *Cuffie*, 414 Mass. 632, 639 (1993). Where it is a stash of cocaine that forms the basis for a charge of trafficking, a defendant can only share an intent to traffic if he knows the stash exists. The joint venturer need not know the amount of cocaine in the stash, *id.* at 638-639 (nor need the principal, *Commonwealth* v. *Rodriguez*, 415 Mass. 447, 453 [1993]), or even that the stash is in fact cocaine, as long as he knows it is a controlled substance, *id.* at 454.

The difficulty for the defendant is that he did not request such an instruction. After the judge instructed the jury, defense counsel[2] asked the judge to instruct also that "each defendant should be judged on his own as to whether or not he possessed or constructively possessed the drugs in that ceiling panel . . . . There must be an independent finding that I know that I had the right to exercise dominion and control over whatever is in that panel . . . ." He even submitted a written proposed instruction

---

[2]The defendant's trial counsel is not his appellate counsel.

to that effect.[3] The requested instruction was patently inaccurate. Under the joint venture theory, for a trafficking conviction, the defendant need not have possessed the drugs, actually or constructively. See *Commonwealth* v. *Sabetti*, 411 Mass. 770, 779-780 (1992); *Commonwealth* v. *James*, 30 Mass. App. Ct. 490, 499 (1991). He need only have shared the intent of the principal to distribute. The judge properly denied the defendant's request.[4]

This was not a case suggesting a low-level assistant ignorant of a larger stash or an assistant involved only in a one-time sale. Rather, the evidence was plentiful that the defendant

---

[3]The defendant's written request for an instruction also did not adequately raise the issue he now argues. The requested instruction provided: "A person may joint venture [*sic*] as to distribution of drugs but in order to find constructive possession of drugs not at same place as act of distribution you must find defendant himself was capable of control and dominion *in fact* and not by joint venture with another merely from the venture to distribute. In other words you must judge each defendant separately as regards their possession of the drugs (or constructive possession of the drugs) and not by joint venture."

[4]The defendant's trial argument was not sufficient to preserve the issue he seeks to raise on appeal. Even if we were to assume that the defendant properly preserved the issue, there was no prejudice. See *Commonwealth* v. *Prater*, 431 Mass. 86, 97 (2000) (where error in instruction is preserved, court reviews to determine whether there was prejudicial error). The judge defined the shared intent component of joint venture liability as the intent "to distribute the cocaine to others." He then instructed that the defendant must share "the same intent as the principal, the intent required for the underlying crime." The judge further instructed the jury that they may find the defendant guilty, as a joint venturer or as a principal, or both, of the offense as charged, viz., trafficking in one hundred grams or more of cocaine, or of the lesser included offenses of trafficking in twenty-eight grams or more (but less than one hundred grams) or of possession of cocaine with intent to distribute. Of course, the jury could find the defendant not guilty on any theory. Thus, the instructions adequately conveyed to the jury that the extent of the guilt of the defendant depended on the nature of his agreement with Quinones and the degree to which he shared Quinones's intent to engage in trafficking. See *Commonwealth* v. *Cuffie*, 414 Mass. 632, 639 (1993). This subsumed the defendant's knowledge. In other words, no reasonable juror could have understood the jury instructions to allow conviction of the defendant of trafficking on a joint venture theory if he did not know of the hidden stash. See *Commonwealth* v. *Nieves*, 394 Mass. 355, 360 (1985), and cases cited (where claim of error in instructions is preserved, court assesses how reasonable juror could have interpreted instruction). Our conclusion that the omission of the instruction did not prejudice the defendant is bolstered by the overwhelming strength and nature of the evidence against him as a joint venturer, which we noted in the text.

regularly and repeatedly assisted Quinones in the distribution of the stash, and that the defendant "would necessarily understand that [the concealed inventory] was of a quantity sufficient to support the volume of traffic in which he [was] involved." *Commonwealth* v. *Rivera*, 40 Mass. App. Ct. 308, 312 (1996). See *Commonwealth* v. *Cuffie*, 414 Mass. 632, 639 (1993); *Commonwealth* v. *Sabetti*, *supra* at 780; *Commonwealth* v. *Robinson*, 43 Mass. App. Ct. 257, 261 (1997).

*Judgment affirmed.*