APPEALS COURT 
 
 COMMONWEALTH vs. BERNARDINO LOPEZ

 
 Docket:
 24-P-494
 
 
 Dates:
 March 11, 2025 – July 17, 2025
 
 
 Present:
 Desmond, Ditkoff, & Englander, JJ.
 
 
 County:
 Essex
 

 
 Keywords:
 Controlled Substances. Narcotic Drugs. Practice, Criminal, Instructions to jury.
 
 

  
      Complaint received and sworn to in the Lawrence Division of the District Court Department on May 18, 2021.
      The case was tried before Stephen B. Geary, J.
      Jose A. Moncada for the defendant.
      Zachary D. Grube, Assistant District Attorney, for the Commonwealth.
      DITKOFF, J.  The defendant, Bernardino Lopez, appeals from his convictions, after a District Court jury trial, of distribution of fentanyl, in violation of G. L. c. 94C, § 32 (a), and possession of cocaine, in violation of G. L. c. 94C, § 34.  It is well-settled law that, in a drug prosecution, the Commonwealth must prove that the defendant knew that what he possessed was a controlled substance, but need not prove that he knew which particular controlled substance he possessed or the quantity of that controlled substance, even where those factors control the sentencing range.  Following that logic, we conclude that, where a defendant is charged with multiple drug crimes involving two different controlled substances, the Commonwealth need not prove that the defendant knew that the substances were two distinct substances.  With that understanding, we reject the defendant's challenges to the sufficiency of the evidence and the jury instructions, and we affirm the convictions.
      1.  Background.  In May 2021, Lawrence police officers saw a group of people slowly congregate around a box truck parked in a parking lot.  The officers had received numerous reports of criminal activity taking place in the lot and were there to "locate individuals potentially engaged in drug transactions."
      After the defendant joined the group around the box truck, a man (buyer) approached him, and the defendant and the buyer subsequently crossed the street to a park where they were joined by a third individual.  After a brief conversation, the three men crossed the street and returned to the lot.  Upon reentering the lot, the defendant walked to the rear of the box truck, reached the length of his arm underneath the bumper, and retrieved a brown bag.  The defendant pulled a white pill bottle from this bag before walking over to the buyer.  The officer lost sight of the pill bottle.
      The defendant and the buyer were then joined by another individual (middleman).  The defendant handed the bag to the middleman who proceeded to engage in a hand-to-hand exchange of a small item with the buyer.  Upon completion of the exchange, the buyer left the parking lot while the defendant and the middleman remained near the box truck.  Shortly thereafter, the surveilling officers approached the box truck.  Upon seeing the officers, the middleman tossed the bag into a bush a few feet from himself and the defendant.  The middleman and the defendant were the only people in the lot near the discarded bag.  The officers seized the bag, which contained the pill bottle, and arrested both men.[1]  The pill bottle contained two controlled substances:  twenty-eight bags of cocaine and four bags of fentanyl.
      The buyer was later arrested and transported to a police station.[2]  Police officers noted that the buyer appeared to be concealing an item prior to arrest.  After transporting him, officers recovered two clear plastic bags containing powdery substances from the area where the buyer was seated.  The contents of the plastic bags found near the buyer, as well as those in the pill bottle in the brown bag found near the defendant and the middleman, were later tested and identified as fentanyl and cocaine.
      Following a two-day trial in the District Court, a jury convicted the defendant of distributing fentanyl to the buyer and of possession of cocaine.[3]  This appeal followed.
      2.  Sufficiency of the evidence.  "[W]e consider the evidence introduced at trial in the light most favorable to the Commonwealth, and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Commonwealth v. Oberle, 476 Mass. 539, 547 (2017).  "The inferences that support a conviction 'need only be reasonable and possible; [they] need not be necessary or inescapable.'"  Commonwealth v. Tsonis, 96 Mass. App. Ct. 214, 216 (2019), quoting Commonwealth v. Waller, 90 Mass. App. Ct. 295, 303 (2016).
      To prove the crime of distribution, the Commonwealth must prove (1) the identity of the substance as a controlled substance; (2) distribution to another person; and (3) that the defendant did so knowingly or intentionally.  See Commonwealth v. Dancy, 75 Mass. App. Ct. 175, 186 (2009).  To prove the crime of possession of a controlled substance, the Commonwealth must prove (1) the identity of the substance as a controlled substance; (2) that the defendant had actual or constructive possession of the substance; and (3) that the defendant possessed the controlled substance knowingly or intentionally.  See G. L. c. 94C, § 34.  "Proof of constructive possession requires the Commonwealth to show 'knowledge coupled with the ability and intention to exercise dominion and control.'"  Commonwealth v. Cullity, 470 Mass. 1022, 1023 (2015), quoting Commonwealth v. Gonzalez, 452 Mass. 142, 146 (2008).  Here, the defendant challenges only the proof of the third element (knowledge) of each crime.
      Although the "particular controlled substance alleged in the complaint is an essential element of the offense for the Commonwealth to prove," Commonwealth v. McGilvery, 74 Mass. App. Ct. 508, 511 (2009), "[p]roof that the defendant knew the exact nature of the controlled substance is not an element of the crime," Commonwealth v. Rodriguez, 415 Mass. 447, 454 (1993).  Rather, the identity of the controlled substance and its associated class solely define the possible sentencing a defendant faces.  See id.  Accordingly, "the Commonwealth is required to prove only that the defendant knew that he possessed a controlled substance, not necessarily that he knew [which] he possessed."  Commonwealth v. DePalma, 41 Mass. App. Ct. 798, 801 (1996).  Just as the Commonwealth is not required to prove that the defendant knew which controlled substance he possessed, the Commonwealth likewise "need not prove that the defendant had actual knowledge of the quantity [of the controlled substance]."  Commonwealth v. Sweezey, 50 Mass. App. Ct. 48, 55 (2000), quoting Rodriguez, supra at 453.  See Commonwealth v. Hernandez, 439 Mass. 688, 694 (2003) (defendant "need not know the amount of cocaine in the stash . . . or even that the stash is in fact cocaine, as long as he knows it is a controlled substance").
      The defendant, however, argues that, where a defendant is charged with multiple drug crimes involving two different controlled substances, the Commonwealth must prove that he knew there were two distinct substances.  That is not the law.
      The Supreme Judicial Court's conclusion that a defendant need not know the "exact nature of the controlled substance" was based on its conclusion that the logic of our drug laws "is one of increasing penalties for increasing quantities of increasingly dangerous drugs."  Rodriguez, 415 Mass. at 454, quoting Commonwealth v. Maracic, 18 Mass. App. Ct. 722, 724 (1984).  Indeed, chapter 94C provides escalating punishments for distributing different sorts of drugs, ranging from a maximum of nine months in a house of correction for distributing a class E substance, G. L. c. 94C, § 32D (a), to a maximum of fifteen years in State prison, with a mandatory minimum term of three and one-half years, for subsequent distribution of a class A substance, G. L. c. 94C, § 32 (b).  Where large quantities are involved, G. L. c. 94C, § 32E, provides a dizzying array of penalties based on drug type and quantity.  The penalties for simple possession similarly vary by substance.  See G. L. c. 94C, § 34.  Thus, the Supreme Judicial Court deduced that the Legislature intended to criminalize the distribution of a controlled substance, and to set the penalty for doing so based on the nature and quantity of the substance.  See Rodriguez, supra.
      Just as the potential harm from drugs increases as one moves from marijuana to cocaine to fentanyl and as one increases the quantity, the potential harm increases when one moves from one substance to multiple substances (or, worse, mixtures of substances).[4]  Under the law, a defendant who distributes two hundred grams of heroin receives a mandatory minimum sentence of twelve years in State prison, regardless of whether that defendant knows the substance is heroin or knows its quantity.  See G. L. c. 94C, § 32E (c) (4).  In light of that, it would be illogical to conclude that a defendant possessing two controlled substances cannot be punished based on those two substances, even where the defendant is unaware that those two substances have different natures.  Accordingly, although the Commonwealth must still prove the identity (and, where relevant, the quantity) of the controlled substance, see McGilvery, 74 Mass. App. Ct. at 511, as it relates to a defendant's knowledge, the Commonwealth need prove only that a defendant knew that it was a controlled substance.
      Here, as the defendant concedes, this requirement was met.  A defendant's knowledge that a substance was controlled "may be, and generally is, proved by circumstantial evidence; and it may be inferred from a great variety of circumstances."  DePalma, 41 Mass. App. Ct. at 801, quoting Commonwealth v. LaPerle, 19 Mass. App. Ct. 424, 426-427 (1985).  In this case, the defendant's hiding the drugs under a truck and then using a middleman to distribute the drugs to the buyer provided ample circumstantial evidence to permit a rational jury to find that the defendant knew the pill bottle contained a controlled substance.  See Gonzalez, 452 Mass. at 147.
      3.  Jury instructions.  "Judges have broad discretion in framing jury instructions, including determining the appropriate degree of elaboration."  Commonwealth v. Toolan, 490 Mass. 698, 708 (2022).  "When reviewing jury instructions, we 'evaluate the instruction as a whole, looking for the interpretation a reasonable juror would place on the judge's words.'"  Commonwealth v. Fan, 490 Mass. 433, 453 (2022), quoting Commonwealth v. Odgren, 483 Mass. 41, 46 (2019).  "Due to the defendant's failure to object to the jury instructions given at trial, our review is limited to determining whether any error in the instructions gave rise to a substantial risk of a miscarriage of justice."  Commonwealth v. Taranovsky, 93 Mass. App. Ct. 399, 405 (2018).
      The trial judge here instructed the jury that "[t]he Commonwealth is required to prove that the defendant knew the substance . . . was a controlled substance, but it is not required to prove that the defendant knew which particular controlled substance that it was."  As explained supra, the Commonwealth was not required to prove that the defendant knew that he possessed two distinct controlled substances, and thus the judge was not required to instruct the jury that the Commonwealth had to prove such knowledge.  Accordingly, the trial judge properly instructed the jury.
                              
 
Judgments affirmed.
footnotes

          [1] The middleman ultimately pleaded guilty to multiple drug charges.
               [2] The buyer ultimately received a continuance without a finding for possession of drugs.
               [3] The defendant was charged with possession of a class B substance (cocaine) with the intent to distribute, G. L. c. 94C, § 32A (a), but the jury found the defendant guilty of the lesser included offense of possession of a class B substance, G. L. c. 94C, § 34.
          [4] We are not blind to the particular danger posed by the mixture of fentanyl with drugs such as cocaine.  See Centers for Disease Control and Prevention, The Facts about Fentanyl, www.cdc.gov/overdose-resources/pdf/CDC_Fentanyl-Fact-Sheet_General_508.pdf [https://perma.cc/W2SK-R3JS].