COMMONWEALTH *vs.* GEORGE BURKETT. December 21, 1977. 1. We do not consider the defendant's present contention that the judge should have excluded the in-court identification of him by the witness Jones on the ground that that witness had, at the request of the police, participated in a pretrial photographic identification of the defendant at a time when the defendant was already in custody and available for a corporeal lineup; the record (especially the transcript of the pretrial hearing on the defendant's motion to suppress) is quite clear that no such question was raised or passed on below. Compare *Commonwealth* v. *Proctor,* 355 Mass. 504, 506 (1969); *Commonwealth* v. *Coburn, ante,* 781, 782 (1977). 2. We are not persuaded that the defendant was harmed (contrast *Commonwealth* v. *Barrett,* 1 Mass. App. Ct. 332, 336-337 [1973]; *Commonwealth* v. *Barrett,* 3 Mass. App. Ct. 8, 17-18 [1975]) by the judge's refusal to "strike" the entire venire following the clerk's inadvertent reference to the allegation of a second offence (see G. L. c. 278, § 11A) contained in the indictment under G. L. c. 269, § 10(*a*), in the course of summarizing the allegations of all five indictments preparatory to the exercise of challenges to the first fourteen veniremen called as prospective jurors. The judge instructed the veniremen, in effect, to disregard what they had heard concerning all the indictments; the clerk resummarized all the indictments in a different order, without any reference to a second offence; there was no reference to such an offence when the indictments were read at length to the jurors who were ultimately seated, or in the copy of the indictment under § 10(*a*) which was sent out with the jury during their deliberations; and there was overwhelming evidence at trial that the defendant had carried a fireable handgun throughout the course of all the events of the day, including the robbery, the shootout with the police and both kidnappings. 3. The evidence that either the defendant or the codefendant Corgain[1] (it is not clear which)

_____

[1] Corgain's participation in some of the events of the day has already been considered by this court in *Commonwealth* v. *Corgain, ante,* 899 (1977).

had told the codefendant Coleman just prior to the robbery that "[w]e're going into the store to buy some slacks or a shirt or something" was offered by Coleman (not by the Commonwealth) during the course of his direct testimony and was material and expressly limited to the question whether Coleman (who was acquitted of all charges stemming from the robbery) had been aware of any plan to commit a robbery when he had agreed to wait for the defendant and Corgain in his car and drive them back to Roxbury. That statement, the substance of which was elicited again (without objection) during the course of Coleman's cross examination, was at worst only mildly incriminating (contrast *Bruton* v. *United States,* 391 U. S. 123, 135-136 [1968]) so far as the defendant was concerned, particularly when contrasted with the unequivocal and unshaken eyewitness testimony of one of the victims (the aforementioned Jones), which placed the defendant in the store, and the testimony of the police officer, who observed and pursued the defendant as he left the store. If there was error in the admission of the quoted statement, it was harmless beyond a reasonable doubt. Compare *Commonwealth* v. *Corradino,* 368 Mass. 411, 419-420 (1975); *Commonwealth* v. *Benjamin,* 3 Mass. App. Ct. 604, 648-649 (1975). 4. At the time of the offenses charged the defendant was a furlough escapee from the Massachusetts Correctional Institution at Walpole. During the hearing on various pretrial motions the judge, after conferring with all counsel and an apparently knowledgeable deputy sheriff, had (without objection) ordered the taking of extraordinary security measures, including leg irons on the defendant (invisible to the jury) while he should be in the dock. At the conclusion of that hearing and just prior to the commencement of the trial the judge expressed the belief that the defendant's repeated requests for dental attention were prompted by the defendant's desire to secure a dentist for use as a hostage for an escape. Immediately following the afternoon recess on the fourth and penultimate day of trial the defendant's counsel presented a written motion for a mental examination of the defendant in order to determine his competency to stand trial (G. L. c. 123, § 15[a]). The record discloses no history of any prior mental illness on the part of the defendant, no prior request for any form of mental examination, and no testimony of any kind concerning the defendant's mental condition at any time (contrast *Pate* v. *Robinson,* 383 U. S. 375, 378-383 [1966]; *Drope* v. *Missouri,* 420 U. S. 162, 164-167, 169 [1975]; *Rhay* v. *White,* 385 F. 2d 883, 884-885 [9th Cir. 1967]); the sole support for the motion consisted of the oral representations of counsel to the effect that the defendant had removed his necktie as the jurors were leaving the court room at the commencement of the recess (which the judge found to be true) and had thereafter removed his clothing to the waist, crawled around in the dock, vomited, and accused the deputies of poisoning him (as to which the judge made no finding). The motion was denied. Although the reason for the ruling is not entirely clear, it is obvious that the judge could properly have concluded that the defendant had been dissembling (compare *Commonwealth* v. *Vailes,* 360 Mass. 522, 525 [1971]) and that his actions had been prompted by a desire to secure a more favorable climate for an escape. Considering all the circumstances, we are of the opinion that the defendant has failed to establish a factual predicate (compare *Commonwealth* v. *Silva,* 371 Mass. 819, 821 [1977]) for a " 'substantial question of possible doubt' " (*Commonwealth* v. *Vailes,* 360 Mass. at 524; *Com-*

*monwealth* v. *Hubbard,* 371 Mass. 160, 172 [1976]; *Commonwealth* v. *Hill, ante,* 130, 135, further appellate review granted, 372 Mass. 871 [1977]) as to his competency to stand trial. Contrast *Tillery* v. *Eyman,* 492 F. 2d 1056, 1057, 1058 (9th Cir. 1974). 5. The defendant's request for instruction no. 30(5) was properly denied for the reasons set out in *Commonwealth* v. *Jones,* 372 Mass. 403, 406-410 (1977). 6. The offence of assault with intent to murder while armed with a dangerous weapon (G. L. c. 265, § 18), for which the defendant was indicted, does not require proof that the assault was committed by use of the weapon but does require proof of an intent to murder; the offence of assault by means of a dangerous weapon (G. L. c. 265, § 15B), for which the defendant was not indicted, requires proof that the assault was committed by use of the weapon. As each offence requires proof of different facts, the latter is not a lesser included offence of the former (compare *Salemme* v. *Commonwealth,* 370 Mass. 421, 424 [1976]), and the judge could not properly have given the second sentence of the defendant's request for instruction no. 25. It is not argued that the judge should have instructed that the defendant could be found guilty of assault with intent to kill (see *Commonwealth* v. *Hebert,* 373 Mass. 535, 538 [1977], and cases cited) or simple assault (see *Commonwealth* v. *Eaton,* 2 Mass. App. Ct. 113, 118 [1974]). 7. Nor was the judge obliged to instruct the jury that they could find the defendant guilty of attempts to kidnap (see *Commonwealth* v. *Ware, ante,* 506, further appellate review granted, 373 Mass. 864 [1977]) on the indictments framed under G. L. c. 265, § 26. As permitted by that section, both indictments included an allegation that the defendant "without lawful authority, did forcibly . . . confine . . . [the named victim], with intent to cause him to be secretly confined . . . in this Commonwealth against his will." On all the relevant evidence both the offences charged were complete at least as soon as the defendant climbed into the back of the Iakic car (in which Kostovic was a passenger), pointed his gun at Iakic's head with an order to drive, and the car began to move. The fact that the car moved only a few hundred feet because a police officer shot out one of the tires is beside the point. 8. The dockets disclose that the Appellate Division of the Superior Court (G. L. c. 278, §§ 28A-28D) dismissed the defendant's appeals from all his various sentences, but the record discloses nothing of what did or did not transpire during the course of the proceedings before the division. The defendant's brief contains a lengthy discussion of what he considers are an appellant's rights on such appeals, but the only specific complaint is that "counsel in the present case was forced to confront the [c]ourt not knowing what facts the judges had before them." As there is no amplifying assertion (and the Commonwealth does not agree) that disclosure of such facts was ever sought or denied, we decline the defendant's invitation to engage in abstract discussion.

*Judgments affirmed.*

*Roger Witkin* for the defendant.

*Charles A. Murray, III,* Assistant District Attorney, for the Commonwealth.