COMMONWEALTH *vs.* DONALD B. WHITLOCK.

No. 94-P-1019.

Hampden. April 14, 1995. - December 8, 1995.

Present: JACOBS, GILLERMAN, & GREENBERG, JJ.

*Controlled Substances. Grand Jury. Clerk of Court. Practice, Criminal,*
Indictment, Instructions to jury. *Joint Enterprise. Evidence,* Chain of
custody, Certificate of drug analysis, Credibility of witness.

At the trial of an indictment alleging distribution of cocaine within 1,000
feet of a school along with an indictment arising out of the same epi-
sode charging the defendant as a repeat offender, the judge properly
exercised his discretion to deny the defendant's motion for a mistrial
based on the clerk's inadvertent reading to the seated jury panel the
allegation of a "second offense," which is prohibited by G. L. c. 278,
§ 11A [516-517]; however, the cumulative effect of the clerk's error
and the judge's erroneous instruction to the jury with respect to the
defendant's proximity to the controlled substance as bearing on the
issues of the defendant's knowledge of and control over the cocaine cre-
ated a substantial risk of a miscarriage of justice [517-520] and a new
trial was required.

INDICTMENTS found and returned in the Superior Court
Department on May 19, 1992.

The cases were tried before *William H. Welch,* J.

*Joseph A. Hanofee* for the defendant.

*William M. Bennett,* District Attorney, *Judy Zeprun
Kalman & Michael J. Hickson,* Assistant District Attorneys,
for the Commonwealth, submitted a brief.

GREENBERG, J. A Hampden County grand jury indicted
Donald B. Whitlock for unlawful distribution of cocaine
within 1,000 feet of a school (no. 92-1202) (G. L. c. 94C,
§ 32J). A second indictment (no. 92-1203) arising out of the
same episode, charged him as a repeat offender under G. L.
c. 94C, § 32A(*c*) & (*d*). Just after the jury were sworn, the
session clerk inadvertently read them the allegation of a

"second offense" contained in the second indictment. Such an announcement in open court is prohibited by statute.[1] After the judge declined the defendant's request for a mistrial on that account, trial proceeded. The defendant preferred not to request a curative instruction on the point.[2] The jury found the defendant guilty of the unlawful distribution charge. At a subsequent bench trial, the same judge then convicted the defendant on the indictment charging a second offense, and sentenced him to a minimum mandatory term in a State prison.

The principal witnesses for the Commonwealth were two undercover police officers, who testified at trial as follows: At about 10:50 P.M., the officers drove down Reed Street in Springfield in an unmarked vehicle. That section of the city, near the public school on Homer Street, was known as a "hot spot" for drug trafficking. When the officers reached the intersection of Reed Street and Wilberham Road, they saw the defendant and another man standing on the corner. Another person was positioned on the opposite corner, and several others were milling about. The officers testified that the de-

---

[1] General Laws c. 278, § 11A, in pertinent part, reads as follows:

"If a defendant is charged with a crime for which more severe punishment is provided for second and subsequent offenses, and the complaint or indictment alleges that the offense charged is a second or subsequent offense, the defendant on arraignment shall be inquired of only for a plea of guilty or not guilty to the crime charged, and that portion of the indictment or complaint that charges, or refers to a charge that, said crime is a second or subsequent offense shall not be read in open court. If such defendant pleads not guilty and is tried before a jury, no part of the complaint or indictment which alleges that the crime charged is a second or subsequent offense shall be read or shown to the jury or referred to in any manner during the trial . . . ."

[2] On appeal, the defendant argues that the judgments of conviction should be reversed because, among other things, he received ineffective assistance of counsel when his lawyer failed to request corrective measures from the judge. We cannot fault counsel for choosing not to highlight the clerk's error by asking the jurors to disregard what the session clerk announced. See *Commonwealth* v. *DiMarzo*, 364 Mass. 669, 681 (1979). The defendant himself acknowledges the merit of this strategy in another section of his brief, stating that trial counsel "timely sought a mistrial, but *wisely* did not seek a curative instruction" (emphasis added).

fendant flagged them down as they approached. The officer driving rolled down his window, and a number of people gathered around the car. Both officers observed the defendant peer through the driver's open side window. He said to them, "What are you looking for?" The driver responded that he wanted "a twenty," a term known in the drug trade as meaning twenty dollars worth of crack cocaine. According to the officers, the defendant displayed "two rocks" in his hands. The driver grabbed one of them; it appeared to be "crack" cocaine wrapped in plastic. No money was exchanged. After both officers feigned an inspection of the packet, they identified themselves as police officers. As they stepped out of the cruiser to make arrests, everyone except the defendant fled. Upon his arrest, a search of his person revealed only small change in his pocket. The other "rock" was nowhere to be found, not on the defendant's person nor in the immediate area.

On his part, the defendant presented no witnesses and chose to rely upon the cross-examination of the government's witnesses. The thrust of the defense was that the police had mistakenly identified the defendant as the seller. Defense counsel's line of questions put to the arresting officers sought to establish that the defendant was a curious bystander not involved in the transaction. That, coupled with the defendant's lack of flight was the predominant theme of defense counsel's cross-examination. On appeal, the defendant does not quarrel with the sufficiency of the evidence. Citing two errors of law, the defendant argues that his convictions should be reversed.

1. *The reading of the second offender indictment.* We have held that where a clerk violates G. L. c. 278, § 11A, it is within the trial judge's discretion whether to declare a mistrial. *Commonwealth* v. *Burkett,* 5 Mass. App. Ct. 901 (1977). In *Burkett,* we affirmed the defendant's conviction, stating that he was not harmed by the judge's refusal to strike the entire venire after the clerk's inadvertent reading of the subsequent offense language. We concluded that the reference did not harm the defendant for several reasons:

(1) the reference was read before the jury were sworn; (2) the judge gave curative instructions; (3) the indictments were then resummarized in a different order by the clerk without the forbidden reference to a subsequent offense; and (4) the evidence in the case was overwhelming.

In the only other published opinion which mentions the point, *Commonwealth* v. *Williams*, 19 Mass. App. Ct. 915, 916 (1984), we reversed the defendant's conviction on a charge of operating while under the influence, second offense (see G. L. c. 90, § 24[1][a][1]) because the judge himself mistakenly advised the jury of the second offense allegation. That gaffe, in combination with the judge's erroneous jury instruction relating to the defendant's score on his breathalyzer test (see G. L. c. 90, § 24[1][e]), tipped the scale for reversal.

We take the government's argument in the present case to be that the clerk's reading of part of the indictment[3] does not attain the same level of harm as occurred in the *Williams* case. As an ameliorating factor the judge gave a common general instruction to the jury immediately following the reading of the second indictment and at the close of the evidence to the effect that indictments have no evidentiary value.

The question is close, but this error standing alone would not suffice to reverse the defendant's conviction. However,

---

[3]The clerk stated the following:

"Case Number 92-1203, Commonwealth versus Donald Whitlock, indictment, unlawful distribution of a *controlled substance*, Class B, Cocaine, Subsequent Offense, General Laws Chapter 94C, Section 32A, Subsection C and D [emphasis supplied].

"At the Superior Court, begun and holden at Springfield within and for the County of Hampden, on the first Monday of May, 1992. The jurors for the Commonwealth of Massachusetts on their oath present that Donald Whitlock, defendant herein of Springfield, in the County of Hampden, on or about May 4th, 1992, at Springfield in the County of Hampden, not being authorized by the provisions of Chapter 94C of the General Laws, did knowingly or intentionally manufacture, distribute or dispense a controlled substance in Class B, namely, cocaine, the said Donald . . . ."

At this point, before he read "Whitlock having been previously convicted of a similar offense in the Hampden Superior Court on September 29, 1987," the judge stopped the clerk.

taken in combination with the judge's incomplete "proximity" instruction, which is described below, we are left with the clear opinion that these errors have resulted in a substantial miscarriage of justice. See *Commonwealth* v. *Cancel*, 394 Mass. 567, 576 (1985).

2. *The proximity instruction.* On appeal, though the issue was not raised at trial, the defendant contends that the proximity instruction, as given, resulted in a substantial miscarriage of justice because it wrongly characterized the defendant as a joint venturer. He also claims error because (1) the charge contained language which mistakenly suggested to the jury that the defendant's presence at the scene of the unlawful distribution was evidence from which they could infer guilt on a theory of constructive possession, see, e.g., *Commonwealth* v. *Arias*, 29 Mass. App. Ct. 613, 618 (1990), *S.C.*, 410 Mass. 1005 (1991); and (2) the judge failed to caution the jury that proximity, even with knowledge of the presence of contraband, is not evidence of a crime unless those factors combine with others to permit an inference of control. *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. 563, 567-569 (1980), and cased cited; *Commonwealth* v. *Dennis*, 33 Mass. App. Ct. 666, 671 (1992), *S.C.*, 416 Mass. 1001 (1993).

In response to the defendant's request for an instruction on proximity,[4] and after instructing the jury on the required elements of the crime charged, the judge instructed as follows: "Merely being there, being present alone, in and of itself, is not evidence of an intentional and knowing transfer. But the proximity of somebody to a controlled substance is a factor that you can consider in determining whether the defendant knowingly or intentionally transferred that particular substance."

---

[4]The instruction the defendant requested was as follows: "You may not infer that any person is guilty of participation in drug distribution or possession with intent to distribute merely from the fact that he was present at a time or times that the alleged conduct was being carried on or merely had knowledge that it was being carried on."

Proximity to contraband and knowledge of its location do not establish constructive possession unless combined with other indicia to permit an inference of control over the sub-stances. *Commonwealth* v. *Booker*, 31 Mass. App. Ct. 435, 438-439 (1991). Contrast *Commonwealth* v. *LaPerle*, 19 Mass. App. Ct. 424, 426-429 (1985). Possession implies control and power, or, in the case of constructive possession, knowledge coupled with the ability and intention to exercise dominion and control. *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 409 (1989), and cases cited. Presence in the area where contraband is found alone cannot show knowledge or control, but proximity supplemented by other evidence can tip the scale in favor of sufficiency. *Commonwealth* v. *Sheline*, 391 Mass. 279, 284-285 (1984). Nor is constructive possession proved merely through the defendant's association with a person who controlled the contraband. *Booker*, *supra* at 437. Evidence, such as flight from the scene, possession of large amounts of cash, or attempts to conceal or dispose of contraband, do, however, permit an inference of unlawful possession. See *Commonwealth* v. *Nichols*, 4 Mass. App. Ct. 606, 613 (1976). None of these illuminating principles was included in the judge's charge.

The instruction should have conveyed the message to the jury that, in the absence of those factors or other evidence of dominating influence over the contraband, the defendant's guilt might not be inferred. See *Commonwealth* v. *Handy*, 30 Mass. App. Ct. 776, 780 (1991). Rather, the instruction that "proximity . . . is a factor," without more, left open for the jury the potential to consider proximity as the only factor.

The government suggests that the defendant cannot establish prejudice as a matter of law from the flawed instruction because the government's theory (and all direct testimony) was that the defendant personally distributed the cocaine to the officers. However, as noted above, the defendant's defense was based on the theory that the officers mistakenly identified him as the person who handed them the cocaine, and that he was merely innocently present on the street that

night. His defense derived some support from his lack of flight from the scene along with the other suspects and the absence of any large amounts of money, drugs, or paraphernalia on his person. Thus, even if the jury fully credited the defendant's theory that he was merely a bystander, they could have nevertheless found him guilty if confused by the judge's instruction on proximity. The judge, therefore, had a duty to instruct the jury on all aspects of pertinent law applicable to the issues in the case. See *Commonwealth* v. *Pinnick*, 354 Mass. 13, 15 (1968); *Commonwealth* v. *Gladney*, 34 Mass. App. Ct. 151, 160-161 (1993).

Given the mistaken reading to the jury of the indictment charging a second offense and the potential for confusion caused by the judge's instruction, we conclude that the cumulative effect of the errors we have described created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Bassett*, 21 Mass. App. Ct. 713, 717 (1986).

3. *Other claimed errors.* We briefly address other arguments of the defendant, which are without merit, as they may arise in the event of the government electing to retry the defendant.

On appeal, the defendant argues that alleged gaps in the evidentiary chain of custody were fatal to the submission of a chunk of cocaine into evidence. He claims that, while one of the officers testified he had received one rock of crack cocaine, two "white chunks" of cocaine were placed in the Springfield police headquarter's vault. These, he contends, were never properly accounted for or tested by the State laboratory, and, therefore, the evidence should have been excluded. The defendant did not raise the issue at trial and has waived his right to raise it now. There was, however, no error.

The Commonwealth submitted a certificate of analysis as an exhibit pursuant to G. L. c. 111, § 13. Under that statute, the government need not call the chemist who tested the contraband as a witness. See *Commonwealth* v. *Claudio*, 26 Mass. App. Ct. 218, 220 n.1 (1988), *S.C.*, 405 Mass. 481 (1989). Further, one of the officers testified as to the proce-

dure followed to deliver the sample to the testing center. Weaknesses, if there were any, in the chain or custody ordinarily affect the weight a jury might give to the evidence, but do not bar its admission. *Commonwealth* v. *White*, 353 Mass. 409, 419-420 (1967), cert. denied, 391 U.S. 968 (1968), and cases cited. *Commonwealth* v. *Colon*, 33 Mass. App. Ct. 304, 309 (1992).

Finally, the defendant argues, although again he did not object at trial, that the judge erroneously failed to instruct the jury that a policeman's testimony is not to be accorded any greater weight or credibility than that of another witness simply because he is a police officer. Such a garden variety request remains discretionary with the judge. See *Commonwealth* v. *Desmond*, 345 Mass. 774 (1963); *Commonwealth* v. *A Juvenile*, 21 Mass. App. Ct. 121, 124-125 (1985). In this setting, the defendant himself did not testify, nor did he call any witnesses to testify on his behalf. Thus, the possibility of harm to the defendant from the failure to give the special instruction was reduced because there was no danger that the jury would weigh the police officers' testimony more heavily than that of another witness. In any case, the judge properly charged the jury on the importance of determining a witness's demeanor and credibility.[5] A general charge on credibility has been regularly considered enough for these purposes. See *Commonwealth* v. *Desmond*, 345 Mass. at 774; *Commonwealth* v. *Weaver*, 395 Mass. 307, 313 (1985).

The judgments of the Superior Court on both indictments are reversed, the verdicts set aside, and the cases remanded for a new trial.

*So ordered.*

---

[5]What the judge did tell the jury on that score was as follows: "One of the most important things a jury does . . . is to judge the credibility of witnesses. . . . You look at their demeanor on the stand, you look at their body movement, you look at their eye contact, you look at the way they answered questions. Were they succinct, to the point? . . . Were their answers logical? Did they make sense? . . . Is there any inconsistency in their testimony, or the evidence? . . . Did the witness have some motive [to lie]?"