COMMONWEALTH *vs.* JESUS VELASQUEZ, JR.

No. 98-P-334.

Essex. September 14, 1999. - October 27, 1999.

Present: KASS, SMITH, & SPINA, JJ.[1]

*Controlled Substances. Practice, Criminal,* Required finding, Prior conviction. *Joint Enterprise. Evidence,* Joint enterprise, Prior conviction, Prior misconduct.

Evidence, including circumstantial evidence, at the trial of a complaint for possession of cocaine with intent to distribute was sufficient to permit a finding that the defendant had constructive possession of cocaine hidden in the basement of the building in which he rented an apartment [149-150], and that he was a participant in a joint venture to sell cocaine [150-151].

In a criminal case, the judge applied the correct standard in denying the defendant's motion for a required finding of not guilty at the close of the Commonwealth's case. [151-152]

At a criminal trial, the prosecutor's inquiry into the circumstances of an earlier police raid at a former residence of the defendant was probative of a modus operandi of distributing cocaine, and such evidence was properly admitted in the judge's discretion. [152-153]

COMPLAINT received and sworn to in the Haverhill Division of the District Court Department on November 21, 1996.

The case was heard by *Allen G. Swan,* J.

*Alisa M. Rosenthal* for the defendant.

*Adam J. Bookbinder,* Assistant District Attorney, for the Commonwealth.

KASS, J. At his bench trial in District Court on a charge of possession of cocaine with intent to distribute (G. L. c. 94C, § 32A), Velasquez's defense was that his was an innocent and unaware presence in an apartment from which that drug was being sold. At the close of the Commonwealth's evidence, he

---

[1]Justice Spina participated in the deliberation on this case while an Associate Justice of this court, prior to his appointment as an Associate Justice of the Supreme Judicial Court.

moved for a required finding of not guilty, Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979), a motion that was denied. The trial judge found Velasquez guilty. On appeal, the defendant's principal claim of error is the denial of his rule 25(a) motion. Subsidiary to that question is whether the judge applied the correct criteria in acting on the motion. A third, and possibly more challenging, point concerns the manner in which the defendant was cross-examined about his prior convictions. We affirm.

*Facts.* On the basis of the evidence taken in a light most favorable to the Commonwealth, *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979), the judge could have found facts as follows. Approximately two days before he obtained a warrant to search the basement and the third floor, left side, apartment at 40 Central Street in Haverhill, Gary Melanson, a police detective in that city, heard from a confidential informer about cocaine buys made in the basement and the third floor, left, apartment at 40 Central Street in Haverhill. All tenants in the six apartments in the building had access to the basement. After that tip, Detective Melanson made a controlled buy of cocaine through the informer. Melanson also placed the building under surveillance. He noticed a pattern of visits to 40 Central Street that he regarded as typical of drug trade: a heavy volume of visits of very short duration; in and out. He also noticed that when visitors entered the building, someone would appear at a window of the third floor, left, apartment, look out on the street until the visitor left the building, and then recede.

On the strength of his informer's tip, the controlled buy, and his observations, Melanson obtained a search warrant on November 19, 1996. Two four-man teams executed the search warrant on November 20, 1996. Melanson and three State troopers appeared at the front door of the third floor, left, apartment and four Haverhill police officers, led by Sergeant Leeman, entered through the rear door. Both teams made their entries with the help of battering rams. It took Sergeant Leeman's squad five tries to break the rear door down.

Once inside the apartment, Leeman saw the defendant in the bathroom and heard the toilet flushing. As Leeman advanced toward the bathroom, the defendant blocked his way. By the time Leeman made his way into the bathroom, he saw "a brown leafy substance" swirling down the toilet. The sink faucet was wide open and he saw "white items" in the drain that he took

to be crack cocaine.[2] Leeman was unable to catch either substance by hand and bashed the drain pipe and the toilet bowl attempting to retrieve the drugs, but was not successful.[3] The search of the apartment turned up only a telephone bill and an electricity bill addressed to the defendant, two rent receipts in his name, $320 in cash (of which $50 was hidden in the kitchen), and cut corners of plastic baggies, such as are associated with trading in crack cocaine.

Those officers who searched the basement found a clear plastic sandwich baggie with sixteen rocks of crack cocaine as well as a loaded nine millimeter handgun. That discovery led to the arrest of the four occupants of the apartment, including the defendant. Melanson described the defendant on that occasion as saying he, i.e., the defendant, would be going to jail for two years and when he got out he was going to "fuck up the police."

1. *Denial of the motion for a required finding of not guilty.* Velasquez argues that the evidence established nothing more than his presence in the third floor, left, apartment and failed to make any connection between him and the drugs that the police found in the basement. Presence alone where unlawful drugs are found, it is well settled, is not enough from which to infer either possession of the drugs or participation in the unlawful venture to distribute them. *Commonwealth* v. *Arias,* 29 Mass. App. Ct. 613, 618 (1990), *S.C.,* 410 Mass. 1005 (1991). *Commonwealth* v. *Dennis,* 33 Mass. App. Ct. 666, 671 (1992), *S.C.,* 416 Mass. 1001 (1993). There needs to be a "plus" factor, i.e., incriminating evidence of something other than presence. *Commonwealth* v. *Brzezinski,* 405 Mass. 401, 410 (1989). Being engaged in counting the money from drug sales is a dramatic illustration. *Commonwealth* v. *Frias,* 47 Mass. App. Ct. 293, 297-298 (1999).

---

[2]Defense counsel argued that a less sinister inference could be drawn from brown material in a toilet and white items in a sink. Was this not, defense counsel urged, more naturally consistent with feces and soap. The inference the Commonwealth draws from the "brown leafy substance" is that it was marijuana, although unlawful possession or sale of marijuana was never charged and the police found no other traces of marijuana. As we have noted, our duty, for purposes of assessing a "required finding" motion, is to view the evidence in the light most favorable to the Commonwealth.

[3]In his testimony, Sergeant Leeman lapsed into a curious passive voice that suggested a desire to distance himself from the violence in the bathroom. "[T]he drain was broken in an attempt to retrieve those," he said. Similarly, the toilet bowl "was also hit."

No cocaine was found on the defendant's person. The government may, however, under the label "constructive possession," prove that the defendant had knowledge of the unlawful drugs found in the basement, coupled with the ability and intention to exercise dominion over them. *Commonwealth* v. *Daley*, 423 Mass. 747, 752 (1996). *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. 563, 567 (1980). That proof may be accomplished by circumstantial evidence and the reasonable — not inescapable — inferences to be drawn from it. *Commonwealth* v. *Bush*, 427 Mass. 26, 30 (1998). *Commonwealth* v. *LaPerle*, 19 Mass. App. Ct. 424, 426 (1985).

Here, the utility and rent receipts in the name of Velasquez proved his more than casual connection with the apartment. *Commonwealth* v. *James*, 30 Mass. App. Ct. 490, 494 (1991). As to the apartment, the traffic pattern that Detective Melanson had observed and the barricade at the rear door tended to establish that it was a drug trading post. See *Commonwealth* v. *Arias*, 29 Mass. App. Ct. at 619; *Commonwealth* v. *Monterosso*, 33 Mass. App. Ct. 765, 771 (1992). Velasquez's blocking Sergeant Leeman from the bathroom until drugs were beyond retrieval provides a basis for inferring that Velasquez was more than an unlucky occupant of the apartment but was himself involved in the drug selling operation. See *Commonwealth* v. *James, supra* at 497; *Commonwealth* v. *Whitlock*, 39 Mass. App. Ct. 514, 519 (1995). Nor at the time of the bust did the defendant disassociate himself from the drugs in the basement; rather he said he was going to jail for two years, a remark that can be taken as an expression of consciousness of guilt. The defendant's access to the basement area speaks to his ability to exercise dominion over the cocaine hidden there. See *Commonwealth* v. *Gonzalez*, 42 Mass. App. Ct. 235, 237 (1997). That others in the building also had access to the basement and might have hidden drugs in the basement does not require a finding of not guilty in favor of Velasquez. *Commonwealth* v. *Montanez*, 410 Mass. 290, 306 (1991). Compare *Commonwealth* v. *Booker*, 31 Mass. App. Ct. 435, 438 (1991) (defendant did not constructively possess drugs in a common area of her apartment when no other evidence warranted an inference of her control over them).

All this supplies the "plus factor" beyond presence alone to permit a finding that the defendant had constructive possession of the cocaine found in the basement. The same evidence

permits a finding that the defendant had knowledge of the criminal operation and was willing and available to help if necessary; i.e., he was a participant in the joint venture. *Commonwealth* v. *Meehan*, 33 Mass. App. Ct. 262, 264 (1992).

2. *Criteria for acting on a motion for required finding of not guilty.* During argument on the motion for a required finding of not guilty, defense counsel argued that the judge could not, on the basis of the evidence, find beyond a reasonable doubt that Velasquez had been a party to the drug dealing at 40 Central Street. The judge responded, "The standard is whether the Commonwealth has proved a legally sufficient case." On the basis of this exchange, the defense argues on appeal that the judge misinstructed himself as to the criteria for acting on a motion for a required finding of not guilty.

Conflict between those two statements is more apparent than real. The judge apparently had his mind on the text of rule 25(a), which provides that a motion for a required finding of not guilty shall enter "if the evidence is insufficient as a matter of law to sustain a conviction on the charge." What constitutes sufficient evidence was explicated in *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979), as follows: "the . . . question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). That was the formulation adopted in *Commonwealth* v. *Latimore*, 378 Mass. at 676-679, and appellate opinions in Massachusetts have repeated it so often that the language has achieved the status of a mantra.[4]

We highly doubt that the judge was unaware of so familiar a standard. When defense counsel launched her required finding argument, she recited the *Jackson-Latimore* standard almost as quoted above and the judge did not contradict her. The motion for a required finding of not guilty appropriately came at the close of the Commonwealth's case. At that point, the judge did not need to be conclusively persuaded that the inculpating facts had been proved beyond a reasonable doubt; it was enough if the judge decided at that point, on the basis of the evidence produced, that the hypothetical rational trier of fact *could* find those inculpating facts beyond a reasonable doubt. He was cor-

---

[4]The *Jackson-Latimore* formulation has been quoted in its entirety twenty-three times in reported Massachusetts cases. *Latimore* has been cited in no fewer than 486 reported Massachusetts cases.

rect at that stage of the proceedings in challenging defense counsel's assertion that he was required then and there to decide whether Velasquez was, beyond a reasonable doubt, a party to the drug dealing. The judge, at that stage of the proceedings, could reasonably and consistently with the *Latimore* standard state, as he did, "that I am a bit troubled on the connection between the drugs that are in evidence . . . , which are the only drugs that we have in evidence, and the defendant." He did not at that stage have to resolve what weight he was going to give to the Commonwealth's evidence. The two-step process we are attempting to describe was remarked upon in *Jackson* v. *Virginia,* 443 U.S. at 318-319. The Court said, "But this inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' *Woodby* v. *I.N.S.,* 385 U.S. [276,] 282 [(1966)] (emphasis added)." What is troubling to a judge at the time of a motion for a required finding of not guilty may become a certainty or near certainty after further contemplation. By the conclusion of the case, the judge in the instant case appeared to harbor no doubt at all because he declared his finding of guilt immediately after the conclusion of closing arguments. Of course, the judge had by then also heard the defendant's evidence.

3. *Circumstances of the defendant's prior convictions.* Velasquez took the witness stand in his defense. The government, for the purpose of impeaching his credibility, confronted Velasquez with four prior convictions, two for possession, with intent to distribute, of a class B substance and two for assault and battery of a police officer. That was an unremarkable and permissible tactic under G. L. c. 233, § 21. In further cross-examination, the prosecutor, over objection, posed questions to Velasquez about a prior police raid at a former residence of his that he shared with the same roommates and in which the police found drugs in the basement.

Generally, when a prior conviction is used to impeach credibility, the circumstances of that conviction are to be left unexplained. *Lamoureaux* v. *New York, N.H. & H.R.R.,* 169 Mass. 338, 340 (1897). *Commonwealth* v. *Maguire,* 392 Mass. 466, 471 n.10 (1984). *Commonwealth* v. *McGeoghean,* 412 Mass. 839, 843 (1992). As those cases illustrate, the principle has been invoked to exclude attempts by the proponents of the witnesses to rehabilitate them by exploring the circumstances of their convictions. There is good reason, as well, not to permit a

prosecutor offering a prior conviction of a defendant to delve into the circumstances of the conviction for purposes of luxuriating in the prior bad acts of that defendant. The argument made on behalf of Velasquez is that the prosecution did just that — improperly mucked around in his prior bad acts.

Here we get into the distinction between evidence of prior bad acts to show propensity to commit the crime charged, which is inadmissible, *Commonwealth* v. *Barrett,* 418 Mass. 788, 793-794 (1994), and evidence of prior bad acts to show a particular modus operandi, intent, or knowledge, which may be admitted. *Commonwealth* v. *Helfant,* 398 Mass. 214, 224-228 (1986). *Commonwealth* v. *Barrett, supra. Commonwealth* v. *Chartier,* 43 Mass. App. Ct. 758, 760 (1997). Velasquez in his direct testimony had spoken to his distaste for drugs and his distance from whatever drug trade his roommates may have been carrying on. Before the prosecutor produced the prior convictions, her cross-examination of Velasquez had elicited testimony conceding prior residence in an apartment at 40 Emerson Street, Haverhill, and that he had shared that apartment with the same roommates present in the apartment on Central Street involved in the instant case. When Velasquez said that he could not remember whether he had been charged in connection with the earlier raid, the prosecutor produced one of the prior convictions. After evidence of the prior conviction was introduced, the prosecutor inquired of Velasquez where drugs were found in the earlier raid at 40 Emerson Street. The answer was, "in the basement." The evidence concerning the same accomplices working in the same style, i.e., stashing in the basement and dealing from an apartment, was probative, not of propensity, but of a method of operation. As such, it was within the discretion of the judge to admit it, even though intertwined with evidence of one of the prior convictions.

*Judgment affirmed.*