NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-623

COMMONWEALTH

vs.

HASAN TAFT.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A Superior Court jury convicted the defendant of unlawfully possessing a firearm, unlawfully possessing a loaded firearm, and unlawfully possessing ammunition. On appeal, the defendant argues that (1) the evidence was insufficient to support his convictions, (2) the prosecutor made multiple errors in his opening statement and closing argument, (3) prejudicial evidence was improperly admitted, and (4) the Supreme Judicial Court's precedent concerning the automobile exception to the warrant requirement is violative of art. 14 of the Declaration of Rights. The defendant also argues that, under the Supreme Judicial Court's recent holding in Commonwealth v. Guardado, 491 Mass. 666, 690 (2023), the judge's instruction that the jury was not to consider whether the Commonwealth had proven that the defendant did not possess a license to carry a firearm was error

requiring reversal.  We affirm the conviction of possession of a firearm and reverse the convictions of possession of a loaded firearm and possession of ammunition.

Background.  On the evening of December 3, 2018, Boston Police Officers James O'Loughlin and Kyle Holmes were on patrol in Roxbury when they observed a gray Hyundai Sonata travelling at a high rate of speed.  The officers' query of the Sonata's license plate revealed that it was registered to Sheleia Taft-Scott.[1]  The officers then radioed for backup and initiated a traffic stop.  The driver, subsequently identified as the defendant, pulled the car over without incident.

O'Loughlin approached the defendant and requested his identification.  The defendant produced an identification card to which O'Loughlin expressed skepticism because he recognized the defendant from previous encounters.  When O'Loughlin confronted the defendant as to his real identity, the defendant responded, "You know me, bro.  It's Hasan."  After determining that neither the defendant nor the passenger (Kris Elder-Porter) had a valid license to operate a motor vehicle, O'Loughlin and

---

[1] O'Loughlin described a query as submitting the license plate number "through a database which brings back registration status, license status, warrants, any sort of information that we need to gather for the motor vehicle."  The query also informed the officers that the Sonata may have been observed being driven from the scene of a "shots fired" incident that occurred two days prior; this information was not presented to the jury.

Holmes removed them from the Sonata.  The defendant and Elder-Porter then sat on the sidewalk while O'Loughlin and Holmes began an inventorying of the Sonata's contents.

Soon thereafter, a detective called O'Loughlin to inform him that there may be an object under the hood of the Sonata.  In response, O'Loughlin proceeded to the Sonata's driver's side seat area and released the hood latch while Holmes approached the vehicle's hood.  Upon seeing the officers turn their focus to the hood, the defendant jumped up and asked, "What are you guys doing?"  Other officers, who had arrived on the scene and were watching the defendant, told him to sit back down; he complied.  However, once Holmes opened the hood, the defendant jumped up and ran.  He ran for only ten to fifteen feet before the officers caught and detained him.

After raising the hood, O'Loughlin discovered a firearm located in a void in the engine compartment.  The officers refrained from inspecting or removing the firearm, and instead called district detectives to process the evidence.  O'Loughlin later learned from a detective that the firearm was loaded.

Soon after O'Loughlin discovered the firearm, another officer demanded to see the defendant's license to carry.  The defendant replied that he did not have one.

Discussion. 1. Sufficiency of the evidence.  In reviewing a claim that the verdict was not supported by sufficient

3

evidence, the "question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 318-319 (1979).

a. Unlawful possession of firearm. The defendant contends that the evidence was insufficient to prove that he possessed the firearm.[2] Since the firearm was not recovered from the defendant's person, we must determine whether the evidence was sufficient to support the Commonwealth's theory of constructive possession. Constructive possession implies that the defendant had "knowledge coupled with the ability and intention to exercise dominion and control" (citation omitted). Commonwealth v. Brzezinski, 405 Mass. 401, 409 (1989). "Presence alone cannot show the requisite knowledge, power, or intention to exercise control over [contraband], but presence, supplemented by other incriminating evidence, 'will serve to tip the scale in favor of sufficiency.'" Commonwealth v. Albano, 373 Mass. 132,

---

[2] To convict a defendant for unlawful possession of a firearm without a license, the Commonwealth must prove: (1) the defendant possessed a firearm; (2) the firearm fit the legal definition of a firearm; (3) the defendant knew that he possessed a firearm or had a firearm under his control; and (4) the defendant did not have a license to carry firearms. G. L. c. 269, § 10 (a).

4

134 (1977), quoting United States v. Birmley, 529 F.2d 103, 108 (6th Cir. 1976). A defendant's "knowledge or intent is a matter of fact, which is often not susceptible of proof by direct evidence, so resort is frequently made to proof by inference from all the facts and circumstances developed at the trial" (citation omitted). Commonwealth v. Summers, 93 Mass. App. Ct. 260, 262 (2018).

Although the defendant concedes the evidence was sufficient to establish the defendant's knowledge of and ability to control the firearm, he argues that the evidence was insufficient to establish the defendant's intent to exercise control over it and that the Commonwealth failed to prove he was not licensed to carry the firearm.

i. Intent to exercise control. The defendant cites the Supreme Judicial Court's decision in Commonwealth v. Romero, 464 Mass. 648, 653 (2013), as controlling to his contention that the evidence was insufficient to establish his intent to control the firearm. In Romero, the Court found the evidence was insufficient to establish that the defendant, the owner and operator of the vehicle, constructively possessed a firearm recovered from inside his vehicle, even when considering that the evidence established that the defendant had knowledge of and the ability to control the firearm. Id. In determining the evidence to be insufficient to establish the defendant had the

intent to exercise dominion and control, the Court emphasized the lack of any particular link between the defendant and the firearm, such as possession of a holster or ammunition. Id. at 656-657, citing Commonwealth v. Escalera, 462 Mass. 636, 649-650 (2012) (holster found in defendant's bedroom sized to fit two handguns recovered from basement where drugs were located). The Court's analysis of the defendant's intent was further influenced by their examination of the defendant's passengers' behavior, one of whom the evidence demonstrated was the owner and actual possessor of the firearm immediately before the police recovered it from the vehicle. Romero, supra at 649-650, 658-659. Additionally, the Court noted that the defendant's unremarkable behavior in response to the firearm being recovered -- as he made no effort to flee, conceal, or dispose of the gun when the officer approached his vehicle -- was inconsistent with having an intent to control it. Id. 657-658. The Court concluded that the defendant's ownership and operation of a vehicle, with knowledge of and proximity to the firearm was, without more, insufficient to establish constructive possession. Id. at 658-659.

Here, there is more. The circumstances establish a reasonable inference that the defendant had a particular link to the firearm through his retaining exclusive control and unique access to the firearm, as well as his conduct attendant to the

6

recovery of the firearm. See Summers, 93 Mass. App. Ct. at 265 ("[t]he combination of the defendant's location in the Kia, his adjacency to the backpack, the ruse he created, his flight from the scene, and his statements upon his arrest provide[d]" sufficient evidence of intent to control firearm); Commonwealth v. Crapps, 84 Mass. App. Ct. 442, 445 (2013) ("a defendant's proximity, access, and collateral conduct . . . permit[s] the inference of an intention to exercise control over contraband or forbidden weaponry in [a] vehicle"). This is not an instance of a driver merely tolerating the presence of an armed acquaintance in his vehicle, as presented in Romero. Romero, 464 Mass. at 658. Rather, the evidence demonstrates that the defendant made the decision to assume control of a vehicle knowing that he had access to a firearm secreted under the hood. See Summers, 93 Mass. App. Ct. at 263 (defendant's "ready access" to firearm was factor in determining constructive possession); Crapps, 84 Mass. App. Ct. at 445 (same); Commonwealth v. Sadberry, 44 Mass. App. Ct. 934, 936 (1998) (same). Furthermore, there is no evidence that the defendant's sole passenger, Elder-Porter, was either an intervening owner or actual possessor of the firearm, and in effect stood between the firearm and the defendant, thus diminishing the inferential weight that the defendant had the intent to exercise dominion and control over it. Summers, 93 Mass. App. Ct. at 263 (in light of circumstances showing

7

defendant's principal role as possessor, passenger's knowledge of and proximity to firearm was insufficient to establish passenger's intent to exercise control); Commonwealth v. Hamilton, 83 Mass. App. Ct. 406, 412-413 (2013) (absence of evidence of another person having control over apartment or contraband was factor in Court's conclusion that defendant constructively possessed it).  Contrast Romero, 464 Mass. at 649-650 (evidence established defendant's passenger owned and had actual possession of firearm immediately prior to its recovery from defendant's vehicle); Commonwealth v. Boria, 440 Mass. 416, 418-420 (2003) (defendant's proximity and knowledge of contraband insufficient to establish constructive possession when there was stronger evidence pointing to codefendant's intent to control).

Moreover, the defendant provided a false identification upon being stopped, grew visibly agitated when the officer approached the latch to the vehicle's hood, and ran once the police opened the hood.  This conduct constitutes "further consciousness of guilt evidence that tips the scale in favor of sufficiency" concerning the defendant's intent to control the firearm.  See Summers, 93 Mass. App. Ct. at 265; Commonwealth v. Whitlock, 39 Mass. App. Ct. 514, 519 (1995) (evidence of flight from scene permits inference of unlawful possession).  While the defendant would like to confine the reach of his conduct to the

required knowledge prong, it is for the jury to determine the facts and any reasonable inferences drawn therefrom. See Commonwealth v. Ortega, 441 Mass. 170, 174 (2004), quoting Commonwealth v. Martino, 412 Mass. 267, 272 (1992) (interpretation of officers' testimony regarding defendant's conduct concerns "the weight and credibility of the evidence, 'a matter wholly within the province of the jury'"). "To the extent that conflicting inferences are possible from the evidence, 'it is for the jury to determine where the truth lies'" (citations omitted). Commonwealth v. Cotto, 69 Mass. App. Ct. 589, 593 n.6 (2007). See Commonwealth v. Prater, 431 Mass. 86, 97 (2000), citing Commonwealth v. Booker, 386 Mass. 466, 470-471 (1982) ("When there are multiple possible explanations for a defendant's flight, it is for the jury to decide if the defendant's actions resulted from consciousness of guilt or some other reason").

Finally, the defendant's connection to the vehicle, established through his having been observed in the vehicle in the past and that he shared a last name with the vehicle's registered owner, further augments the reasonableness of an inference that the defendant intended to exercise control over the firearm. See, e.g., Crapps, 84 Mass. App. Ct. at 444.

Accordingly, we conclude the defendant's particular connection to and control over the firearm, as well as his

9

collateral conduct in the presence of the police, permitted a rational fact finder to reasonably find that the defendant had the requisite intent to exercise dominion and control over the firearm.

  ii.  Licensure requirement.  The Supreme Judicial Court, in Guardado, 491 Mass. at 690, quoting Commonwealth v. Munoz, 384 Mass. 503, 507 (1981), recently held that "to convict a defendant of unlawful possession of a firearm, the Commonwealth must prove 'as an element of the crime charged' that the defendant in fact failed to comply with the licensure requirements for possessing a firearm."  This holding applied prospectively and to cases, such as this one, that were either active or pending on direct review as of the date of the issuance of that decision (April 13, 2023).  Id. at 694.  Here, the judge instructed the jury as follows as to the unlawful possession of a firearm charge:  "There was no evidence in this case that the defendant has a license to carry a firearm . . . For that reason, the issue of license or exemption is not relevant to your deliberations in this case and therefore you should put it out of your mind."  The defendant did not object and now argues that the judge's failure to instruct the jury, as required by Guardado, that the Commonwealth was required to prove an absence of licensure requires a new trial.

To begin with, the failure to object is of no consequence. In Guardado, 491 Mass. at 686, the Court applied the clairvoyance exception to excuse the failure to object to the absence of a licensure jury instruction, explaining that "the constitutional theory on which the defendant . . . relied was not sufficiently developed at the time of trial . . . to afford the defendant a genuine opportunity to raise his claim" (quotation and citation omitted). See Commonwealth v. Bookman, 492 Mass. 396, 401 (2023) (applying clairvoyance exception in same circumstances). Accordingly, as stated in Bookman, "[t]he remaining question is whether the error was harmless beyond a reasonable doubt" (citation omitted). Bookman, supra.

Here, Officer Conway testified that the defendant told him that he did not have a license to carry. Immediately prior to this testimony, the judge asked defense counsel whether the fact that the defendant had a license was "in dispute in this case," and defense counsel responded, "No."

In light of this undisputed evidence that the defendant was not licensed, we conclude the failure to instruct the jury on the licensure requirement was harmless beyond a reasonable doubt. Bookman, 492 Mass. at 401 (failure to give licensure instruction was harmless beyond reasonable doubt where there was police testimony that defendant did not have license, and where

11

"there [was] nothing in the record to suggest that the defendant disputed this testimony").

b. Unlawful possession of a loaded firearm and unlawful possession of ammunition.[3] Although we conclude that the evidence was sufficient to establish that the defendant possessed the firearm, there was insufficient evidence to allow a rational trier of fact to find beyond a reasonable doubt that the defendant knew that the firearm was loaded.

"[T]o sustain a conviction under G. L. c. 269, § 10 ($\underline{n}$), the Commonwealth must prove that a defendant knew the firearm [they] possessed was loaded." Commonwealth v. Brown, 479 Mass. 600, 601–602 (2018). "Where there is no direct evidence that a defendant knew a gun was loaded, a jury rationally may infer that fact from circumstantial evidence." Commonwealth v. Ashford, 486 Mass. 450, 454 (2020), citing Brown, 479 Mass. at 608. "While this inference need only be reasonable and possible, not necessary and inescapable, it is equally true that 'no essential element of the crime may rest in surmise, conjecture, or guesswork'" (citations omitted). Id. at 454-455.

---

[3] The defendant argues, and the Commonwealth concedes, that the conviction of possession of ammunition was duplicative of the conviction of possession of a loaded firearm and therefore violated the double jeopardy clause. See Commonwealth v. Johnson, 461 Mass. 44, 54 (2011). However, because we conclude that the evidence was insufficient to support either of the convictions involving ammunition, we do not address this issue.

12

The Commonwealth's evidence that the defendant was aware of the ammunition was limited to the presence of the firearm's chamber indicator bar, a device which visibly protruded from the top of the firearm's slide to indicate the firearm was loaded. Thus, absent direct evidence the defendant saw this chamber bar or otherwise knew the firearm was loaded, the Commonwealth's theory of proof was dependent upon circumstantial evidence that the defendant had the opportunity to view the indicator bar to conclude the firearm was loaded. The evidence in this case was insufficient to support an inference that the defendant had ever handled or closely examined the firearm. When discovered by the police, the firearm was wedged next to the vehicle's battery such that only its butt end was visible. Notably the telltale indicator bar on the slide was not apparent. This very limited view of the firearm is established through the Commonwealth's photographic exhibits of the firearm depicting it as it was found under the hood. Furthermore, that the officer who found the firearm testified he only learned "after the fact" from investigating detectives that the firearm was loaded, suggests that it was not evident to him that the gun was loaded when he first discovered it.

The Commonwealth failed to present direct evidence and sufficient circumstantial evidence to establish the defendant ever handled or closely examined the firearm to permit a

13

rational jury to find beyond a reasonable doubt that the defendant knew the firearm was loaded. See Ashford, 486 Mass. at 455; see also Brown, 479 Mass. at 608. Contrast Commonwealth v. Resende, 94 Mass. App. Ct. 194, 200 (2018) (recovery of firearm from defendant's waistband supported inference defendant handled firearm and would have checked to see if it were loaded). Evidence that the defendant fled, without more, is insufficient to establish that he knew the firearm was loaded. See, e.g., Ashford, 486 Mass. at 451 (evidence including defendant's flight from police established that defendant constructively possessed firearm but was insufficient to establish his knowledge it was loaded).

Accordingly, we reverse the convictions for possession of a loaded firearm and possession of ammunition.

2. Opening statement and closing argument. The defendant alleges three errors in the prosecutor's opening statement and closing argument. He asserts that the prosecutor misstated the applicable law, incorrectly argued that the defense witness was biased, and made a speculative and inflammatory claim when he said that the firearm was positioned to enable the defendant to "grab and go." As the defendant did not object to any of the prosecutor's comments, we review for a substantial risk of miscarriage of justice. Commonwealth v. Silvelo, 96 Mass. App. Ct. 85, 91 (2019).

14

In both his opening statement and closing argument, the prosecutor stated that the Commonwealth was going to "prove two things to [the jury]." The prosecutor then emphasized that he would first show that the defendant "knew exactly what was underneath the hood of that car," and that he would then show that the object found under the hood "met the legal definition of a firearm." The defendant argues that, in doing so, the prosecutor misstated the elements of the crime by omitting that it is also necessary to prove that the defendant had the ability and intent to control the firearm. See Summers, 93 Mass. App. Ct. at 262.

We need not decide whether the prosecutor's emphasis of only two elements of the crime was error, because even if it was, it did not create a substantial risk of miscarriage of justice. The judge properly instructed the jury on the elements of the crime immediately before the prosecutor's closing argument, and we assume that the jury followed these instructions. See Commonwealth v. Berry, 466 Mass. 763, 770 (2014). We further note that the prosecutor mentioned in his closing that the evidence showed that the defendant "exercised control" over or "intended to control" the firearm. Additionally, defense counsel's closing argument referenced the requirement that the Commonwealth prove the defendant's ability or intent to exercise control. We are satisfied, under these

15

circumstances, that the judge's instructions mitigated any risk of a substantial miscarriage of justice.

The defendant also asserts the prosecutor erred in arguing that the passenger, who testified for the defense, was the "only witness who actually has a dog in this fight" and by stating that "[the defendant] is his boy, that's his buddy."[4] We discern no error in the prosecutor's comments. Given the evidence of their friendship, it was reasonable to infer that the passenger was biased in favor of the defendant. The prosecutor's comments, which were based on that inference, did not exceed the bounds of fair argument. See Commonwealth v. Roy, 464 Mass. 818, 833 (2013).

The defendant next asserts that the prosecutor's reference to the firearm being in a "grab and go situation" and his statement that the defendant was "the only person that would be in the position that could grab that gun" were improper and misstated the evidence. We disagree. The phrase "grab and go situation" was not inflammatory and did not stoke fears of violence as the defendant suggests. Rather, in the context of

---

[4] The defendant argues that the prosecutor's language here, referring to the defendant as the witness's "boy," was racially charged and therefore prejudiced the defendant. The Commonwealth disagrees, arguing that the term "boy" is common slang for a friend. Although we acknowledge that the prosecutor's use of the term "boy" was better left unsaid, we can discern no substantial risk of miscarriage of justice from the comment.

16

the argument, the prosecutor appeared to be directing the jury's attention to the fact that the firearm was situated under the hood of the car with its handle sticking up, which allowed for the inference that the defendant could have easily removed it. Roy, 464 Mass. at 833. Additionally, the prosecutor did not overstep the bounds of proper argument by emphasizing that the defendant's position in the car, which placed him closest to the hood latch, put him in the best position to open the hood and retrieve the firearm. Id. ("prosecutor may argue forcefully 'for a conviction based on the evidence and on inferences that may reasonably be drawn'" therefrom [citation omitted]). There was no error.

3. Evidentiary claim. The defendant claims that Officer O'Loughlin's testimony that he knew the defendant from "previous encounters" and that he and the defendant "usually have pretty calm conversations when we speak," was prejudicially suggestive of prior bad act evidence. Because the defendant did not preserve an objection[5] to either statement, we review first for error, and if so, whether the error created a substantial risk of a miscarriage of justice. Commonwealth v. Traylor, 472 Mass. 260, 267 (2015).

---

[5] Although defense counsel initially objected to O'Loughlin's testimony that O'Loughlin knew the defendant, counsel withdrew his objection after a sidebar conference.

We conclude that neither statement amounted to error. O'Loughlin's familiarity with the defendant was relevant to the nature of his initial interaction with and identification of the defendant and was properly limited to avoid any reference to prior bad acts.  Furthermore, evidence that the defendant had behaved calmly in previous encounters with O'Loughlin was relevant to the jury's consideration of whether evidence of the defendant's flight allowed for a consciousness-of-guilt inference.[6]  See, e.g., Summers, 93 Mass. App. Ct. at 261 (defendant's flight, after he greeted and conversed with officer with whom he was familiar, demonstrated evidence of consciousness of guilt).

4.  Automobile exception to the warrant requirement.  The defendant also argues that we should reconsider the Supreme Judicial Court's decision in Commonwealth v. Motta, 424 Mass. 117, 123 (1997), concluding that a vehicle's "inherent mobility" allows for a warrantless search of that vehicle in circumstances such as presented in the instant case.  We decline the defendant's request to review the precedent of the Supreme Judicial Court.  Commonwealth v. Vasquez, 456 Mass. 350, 356 (2010) (Supreme Judicial Court "is the highest appellate

---

[6] Even if the admission of these statements amounted to error, their admission would not have materially influenced the jury's verdict in the context of the entire trial.  Commonwealth v. Randoph,438 Mass. 290, 299-300 (2002).

18

authority in the Commonwealth, and [its] decisions on all questions of law are conclusive on all Massachusetts trial courts and the Appeals Court").  See Commonwealth v. Dube, 59 Mass. App. Ct. 476, 485-486 (2003) (Appeals Court has "no power to alter, overrule or decline to follow the holdings of cases" decided by Supreme Judicial Court).

Conclusion.  Because we conclude that the evidence was sufficient to prove beyond a reasonable doubt that the defendant unlawfully possessed a firearm, and that none of the alleged errors in the trial warrant a reversal, we affirm the defendant's conviction on that charge.  However, we conclude that the evidence was insufficient to prove that the defendant unlawfully possessed a loaded firearm and that the defendant unlawfully possessed ammunition; accordingly, we reverse and set aside those convictions.

So ordered.

By the Court (Milkey,
  Neyman & Smyth, JJ.[7]),

Joseph F. Stanton
Clerk

Entered:  October 3, 2023.

---

[7] The panelists are listed in order of seniority.